[Civ. No. 1007. Third Appellate District.—December 12, 1912.]

## CHARLES L. TEALE and ANNIE E. TEALE, his Wife, Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

ACTION FOR DAMAGES FOR PERSONAL INJURIES—NEGLIGENCE—FALL OF PASSENGER FROM UNLIGHTED TRAIN—SUPPORT OF VERDICT.—In an action for damages for personal injuries sustained by a female passenger in falling from an unlighted train at her place of destination, upon its arrival thereat after dark, it is held that the jury was warranted in finding that the place of her alighting and fall was exceedingly dark, and that the accident occurred by reason of the negligent failure of the defendant railroad company to maintain at that time sufficient light in and around its depot, to enable passengers carried by it in its trains to that place to alight therefrom in the night-time with safety, and that the appellate court is concluded by the verdict, as to the evidence supporting the same.

ID.—RESPONSIBILITY OF RAILROAD COMPANY TO MAINTAIN SUFFICIENT LIGHT.—The railroad company, in omitting, without just or legal excuse, to place sufficient light to aid the passengers transported by it on its trains, to alight therefrom at night with safety, was guilty of a violation of a plain legal duty it owes to the passengers thus carried by it. The law imposes on a railroad company engaged in carrying passengers for hire the duty of exercising reasonable care in keeping its platform, approaches thereto, and station grounds, as far as passengers would naturally resort to them, properly lighted at night, for a reasonable time next prior to and immediately following the departure of trains, which its time-cards specify will stop at night to take on or put off passengers.

ID.—EXTENT OF TRAFFIC IMMATERIAL TO LEGAL DUTY AS TO LIGHT—NEGLIGENCE.—It is a duty legally incumbent on common carriers to furnish sufficient light at night at their stations, whatever may be the extent or character of the traffic or business transacted thereat, to enable their passengers alighting from their passenger trains in the night-time, to do so with reasonable safety; and where they fail in such duty, through causes as to which they have control, they are guilty of culpable negligence.

ID.—QUESTION AS TO REASONABLE ANTICIPATION OF CASUALTIES.—The general rule that a carrier of passengers is not obliged to provide against casualties which have not been known to occur before, and which cannot be "reasonably anticipated," has no application to the case of the omission of a railroad company to provide sufficient light at its station to enable a passenger to alight safely from its train at night-time. Where, in the conduct of a business, it must be known that unusual or uncommon danger must necessarily coexist with certain conditions which may be controlled, by the use of reasonable and available means, the law will hold casualties resulting from an omission to control such conditions, as being such as could be "reasonably anticipated," against the happening of which it is the duty of the person conducting such business to adopt and enforce precautionary measures.

ID.—PLAINTIFF NOT CHARGEABLE WITH CONTRIBUTORY NEGLIGENCE OR ASSUMPTION OF RISK—DUTY TO ALIGHT—PERIL CAUSED BY DEFENDANT—QUESTION FOR JURY.—The plaintiff is not chargeable with contributory negligence in her attempt to alight, nor with an assumption of risk in making such attempt. It was her duty to leave the train at her place of destination. Her peril was caused by defendant's negligence. The whole question was also one for the jury to determine, whose verdict concludes further question relative thereto.

ID.—INSTRUCTION AS TO LIGHTING NOT CONTRADICTORY—"SUFFICIENT" AND "PROPER" LIGHT.—An instruction that it is the duty of the railroad company to maintain *sufficient* light at its stations, is not

in conflict with an instruction that it is its duty to keep the station *properly* lighted.

ID.—INSTRUCTION AS TO ASSUMPTION OF RISK PROPERLY DISALLOWED.—
An instruction based on the injured passenger's knowledge of the premises, and her assumption of risk, notwithstanding defendant's negligence in not lighting the premises, was properly disallowed.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial.   Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

F. E. Johnston, and L. E. Johnston, for Appellant.

E. S. Bell, for Respondents.

HART, J.—This is an action to recover damages for personal injuries which the complaint alleges that the plaintiff, Annie E. Teale, suffered through the negligence of the defendant.

The jury by whom the issues of fact were tried found in favor of the plaintiff, awarding her damages in the sum of twenty-five hundred dollars, for which amount judgment was entered in her favor.

The defendant has brought the case to this court by appeals from the judgment and order denying it a new trial.

The complaint, which is in four counts, alleges (in the third count) that the plaintiff, on the evening of January 21, 1908, at the hour of seven P. M., having been on that day a passenger on one of the defendant's railway trains running between the city of Oakland and the town of Calistoga, in Napa County, in attempting to alight from said train at the depot in the last-mentioned place, fell to the ground and thereby sustained serious injuries to one of her lower limbs; that the accident thus happening was due to the culpable fault of the defendant because of its failure to maintain on said evening at said depot sufficient light to enable the plaintiff to see her way down the steps from the platform of the passenger coach in which she was a passenger to the ground.

The defendant, by its answer, besides specifically denying the material facts of the complaint, makes the charge that the

accident whereby the plaintiff was injured was the direct consequence of her own inexcusable fault, and, furthermore, that the circumstances disclose that she assumed the risk incident to the act resulting in the accident and its consequences.

At the close of the plaintiff's case, the fourth cause of action was, by stipulation, stricken from the complaint, and thereupon the defendant moved for a nonsuit as to the remaining causes of action on a number of specific grounds, the general effect of all which was that the evidence presented by the plaintiff in support of her complaint showed that the injuries sustained by her were not proximately caused either by the negligence of the defendant's servants and employees or by that of the defendant itself, but that, to the contrary, it thus appeared that the injuries so received were the direct result of the plaintiff's own negligence.

The court granted the motion as to the first and second causes of action, but denied it as to the third cause of action, which counts on the negligence of the defendant as the proximate cause of the alleged damage.

The principal point relied upon here by the defendant is that the evidence does not support the verdict, or, as the motion for the nonsuit necessarily implies, that plaintiff's own proofs disclose that the accident and consequent injuries to her would not have occurred but for her own inexcusable negligence or palpable want of ordinary care in attempting to leave the passenger coach.

It is further objected that the court committed error, seriously affecting the rights of the defendant, in certain portions of its charge to the jury and also in rejecting certain instructions which the latter requested it to read to the jury.

The evidence discloses these facts: That the plaintiff, who is a woman of advanced years and who had resided in Calistoga and vicinity for forty years, left Oakland, as the complaint alleges, on the afternoon of the twenty-first day of January, 1908, on one of the defendant's railway trains, for the purpose of returning to her home at Calistoga. From Vallejo Junction, to which point she was transported by said train, she was taken by one of the defendant's ferryboats across the straits of Carquinez to the city of Vallejo, where she boarded one of the defendant's train of cars directly plying between the said city of Vallejo and the town of

Calistoga. This train consisted of four cars—a mail car, a baggage car, a smoking car and a passenger coach, the latter being the rear car of the train. The train reached Calistoga at 7:10 o'clock P. M., the schedule time. The day was stormy, a wind and rain prevailing at the time of the arrival of the train at Calistoga. The train stopped at the usual point on its arrival at the depot. Between the depot building and the track on which the passenger train went into Calistoga there were, at the time, some box-cars standing on a track—that is, on the track nearest the depot. When the passenger train came to a standstill, Mrs. Teale arose from her seat and, taking in her left hand a small valise or satchel and in the other carrying a suit-case of the ordinary size, started toward the front end of the passenger coach. Although there were some lights in the car and some in and about the depot building, when she opened the door of the coach to make her exit, she found it to be, as she described it, "pitch dark"—so dark, in fact, that, as she testified, "I couldn't see my hand before my face. It couldn't have been darker. I couldn't see the platform or the steps of the car." She stepped out on the platform, however, and, taking hold of one of the guard rails maintained on either side of the steps, thus started to descend from the platform, and, in doing so, fell to the ground, whether from missing the lower step or miscalculating the distance of the latter to the ground, she was unable to say. The injury consisted of a sprain of the right knee, and from the effects thereof, she testified, she was still suffering at the time of the trial—nearly three years after the injury was received.

We shall not give a synopsis of all the evidence in this opinion. It is thought to be sufficient to say that, from the evidence, the jury were perfectly justified in finding that it was exceedingly dark at the point at which Mrs. Teale alighted or fell from the passenger coach. There can be no doubt that the night was naturally intensely dark, it being very cloudy and a drizzling rain falling; but there is some little doubt as to whether there were any electric lights operating at the time on the outside of and connected with the depot building. One of the employees of the defendant testified that, early that evening, he lighted a coal-oil lamp which was maintained at and on the outside of the building. It is quite clear from the testimony, however, that it was so dark at the

point where Mrs. Teale attempted to alight from the passen-
ger coach that a person standing a distance of twenty or
twenty-five feet from said point could not recognize an ac-
quaintance at the steps of the car. This was shown by the
testimony of Hawley Smith, a runner for a local hotel, who
always met the incoming trains for the purpose of soliciting
patrons. He stated that he was standing at about the dis-
tance above indicated from the steps by means of which Mrs.
Teale attempted to reach the ground. He said there was no
light at .that point. He saw an object fall to the ground,
but while, perhaps, he realized it was some person, he did not
know who it was until he assisted Mrs. Teale to her feet. This
witness could not say that there were any lights at the time
on the outside of and connected with the depot building. He,
in effect, stated, however, that, had there been such lights,
reflection therefrom to the point where the accident occurred
would have been obstructed by the box-cars referred to.
From this testimony, as well as from other testimony in the
case, the jury could have found that the condition as to
darkness of the place where Mrs. Teale received her injuries
might have been due either to one or both of two causes, viz.:
1. That there were no lights in operation on the occasion of
the accident on the outside of and connected with the depot
building; 2. That, if the usual lights were maintained by the
defendant on the outside of said building on that evening,
reflection therefrom to the point where passengers would
naturally alight by means of the steps leading from the exit
of the passenger coach in question was entirely obstructed by
the box-cars standing on the track nearest the depot building
or between the latter and the track on which the passenger
train went into the depot that evening. At all events, the
jury were justified in finding, and their verdict implies that
they did so find, that the accident occurred by reason of the
negligent failure of the defendant to maintain, at said time,
sufficient light in and about its depot at Calistoga to enable
passengers carried by it in its trains to said point to alight
therefrom, in the night-time, with safety. As to the evidence
upon this point, therefore, this court is concluded by the ver-
dict. And it will not be disputed that the defendant, in omit-
ting, without just or legal excuse, to provide sufficient light
to aid the passengers transported by it on its trains to alight

therefrom at night with safety was guilty of a violation of a plain legal duty it owes to passengers thus carried by it. "The law imposes on a railroad company engaged in carrying persons for hire, the duty of exercising reasonable care in keeping its platform, approaches thereto and station grounds, as far as passengers would naturally resort to them, properly lighted at night, for a reasonable time next prior to and immediately following the departure of trains, which its time-cards specify will stop at night to take on or put off passengers." (*Abbott* v. *Oregon R. R. & Nav. Co.,* 46 Or. 549, [114 Am. St. Rep. 885, 7 Ann. Cas. 961, 969, 1 L. R. A. (N. S.) 851, 80 Pac. 1012] ; 3 Thompson on Negligence, sec. 2691; *Louisville & C. Ry. Co.* v. *Lucas,* 119 Ind. 583, [6 L. R. A. 193, 21 N. E. 968] ; 4 Ellis on Railways, sec. 1641; Hutchinson on Carriers; 2d ed., sec. 516.)

The rule as thus stated is expressly indorsed by counsel for the defendant as setting forth, abstractly, a correct statement of the duty in the respect indicated which a railway company owes to passengers going on or leaving its trains; but it is contended that this rule is to be applied according to the conditions or circumstances of the particular case in hand, and that the station at Calistoga, on the occasion of the accident, when consideration is given to the conditions with respect to the character and extent of the business or traffic generally transacted and handled at said station, was sufficiently lighted to satisfy the law or to operate as a full compliance by the defendant with its duty, as prescribed by said rule, to the traveling public engaging its means of transportation. (*St. Louis etc. Railroad Co.* v. *Marshall,* 71 Kan. 866, [81 Pac. 169] ; *Falls* v. *San Francisco etc. R. R. Co.,* 97 Cal. 120, [31 Pac. 901].) Those cases hold, as is obviously true, that whether the railroad company, in the discharge of such duty as is involved here, has exercised that care with respect thereto—a reasonable degree of care—which the law imposes upon it, "depends upon the circumstances of the case —the nature of the road, and the character of the traffic and place where the accident occurred." (*Falls v. San Francisco etc. R. R. Co.,* 97 Cal. 120, [31 Pac. 901].) Or, as the Kansas case, above cited, puts the proposition: "It is true, as the court said, that the proper character of the lights furnished at any particular station will depend upon the character and

extent of business transacted at the station. If many passengers are to be taken on the trains, and many others are to be discharged, if much baggage, mail and express is to be handled by many employees, if the station grounds must be used at the time of the arrival of the trains by many persons having business there with the company, or with incoming or outgoing passengers, confusion and accident at night can be prevented only by the aid of a lighting system much more extensive than would be required under other circumstances.'' In other words and in brief, it is, of course, true that light which might be insufficient at one station might be adequate at a station surrounded by different conditions. But, in the cases cited, and some others similarly expounding the rule under consideration, it will be found that the injuries complained of were mostly received in going to or leaving the station and not in going on or leaving the passenger coaches. No one, however, can dispute the soundness or justness of the rule as thus declared by the cases here referred to as well as other cases not cited, where, as is manifestly so in those cases, the rule is properly applied; but, although it is true, as counsel for the defendant say, that the evidence here shows that the business, particularly the passenger traffic, transacted at the Calistoga station was generally very light (there was but one other passenger in the coach with Mrs. Teale when the train reached Calistoga the evening of the accident), still we see nothing in the rule as it is stated by the cases cited which in any way conflicts with the rule as first above stated in general terms, or, in other words, with the proposition, of the soundness of which there can be no doubt, that it is a duty legally incumbent upon common carriers to furnish sufficient light at night at their stations, whatever may be the extent and character of the traffic or businses generally transacted by them thereat, to enable the passengers going on or leaving their passenger trains in the nighttime to do so with safety, and that where they fail in that duty through causes over which they can exercise control, they are guilty of culpable negligence. In the case at bar, as we understand the description given by the plaintiff, Mrs. Teale, of the condition of the immediate surroundings of the point where she attempted to alight, there was at that time total darkness. Of course, she was entitled to sufficient light

to enable her, by the exercise of proper care, to descend the steps from the platform of the coach to the ground. Such light she was clearly not furnished with. The defendant was negligent in not providing her with the requisite light, and it can make no difference, so far as is concerned the matter of tracing to its negligence in that regard responsibility for the accident and liability for the consequent damage, whether the condition as to light or darkness was due to its failure to maintain the requisite lights on the outside of the depot building at all, or, thus maintaining sufficient light under ordinary circumstances at that station, the reflection therefrom was so obstructed by the line of box-cars standing on the track nearest to the depot as that the light therefrom was prevented from reaching the point where the plaintiff attempted to descend from the car to the ground, and that, by reason thereof, it was too dark at said point to enable her to see the steps.

Nor do we think, as counsel for the defendant contend, that the rule applied in *Holt* v. *Southeast Mo. E. R. Co.*, 84 Mo. App. 443, and approved in *Cary* v. *Los Angeles Ry. Co.*, 157 Cal. 599, 605, [21 Ann. Cas. 1329, 27 L. R. A. (N. S.) 764, 108 Pac. 682, 684], is applicable to this case. The rule referred to is thus stated in the Missouri case mentioned: "A carrier of passengers is not obliged to proceed to provide against casualties which have not been known to occur before and which may not reasonably be anticipated. . . . That which never happened before and which in its character is such as not naturally to occur to prudent men to guard against its happening at all, cannot, when, in the course of years, it does happen, furnish good ground for charge of negligence in not foreseeing its happening and guarding against that remote contingency." In both the Missouri and California cases adverted to and which apply the rule as thus declared, the torts complained of were committed under most unusual circumstances. In each case the accident happened on a crowded street car. In the Missouri case, as the plaintiff was in the act of stepping upon the front platform, where an unusually large number of persons had crowded themselves, the brake on the car became unfastened and, revolving rapidly around, struck her in the face, producing painful and serious injury. The motorman was at his post, and no one knew

how the brake became loosened, whether by the act of the plaintiff herself in taking hold of the brake when she was stepping upon the platform, as was one of the claims of the defendant, or by some one of the other passengers striking with his foot the mechanical applicance by which the motorman, with his foot, manipulated or operated the brake. In the California case, while the plaintiff was in the act of alighting from the car, another passenger, without the knowledge of the conductor, gave a signal to the motorman to start the car. The motorman, in obedience to such signal, started the car, with the result that the plaintiff was thrown violently to the ground and sustained serious injuries. Thus it is readily to be understood that the accidents producing the injuries in those cases were of so unusual a character that of them it cannot be said that they could reasonably be anticipated. In other words, accidents from such causes might not happen more than once in the allotted lifetime of man. They are causes against the occurrence of which the highest prudence or care could not uniformly operate as a guard, and it would indeed be an unjust rule which, in such a case, would authorize the presumption of negligence on the part of a common carrier from acts of that character. Whether such acts are traceable to the negligence of the defendant would depend upon whether the proof affirmatively disclosed that they were brought about directly through the carelessness or negligence of the defendant's employees, servants or agents, and in the cases referred to no such showing was made.

But no such situation as is found in those cases is present in the case at bar. In the first place, it may well be noted and borne in mind that the rule under consideration, as it is stated in the Missouri case, obviously does not mean that it is true under all circumstances that, because a particular accident has not been known to happen before, such accident is not of the character of those casualties which may "reasonably be anticipated" in the sense that it is a duty to exercise reasonable care in guarding against their occurrence. Particular accidents, under whatever circumstances they may occur, cannot, of course, be foreseen; but the character of a business may be such (and that of transportation companies is peculiarly so) that it may reasonably be expected that, in its prosecution under certain conditions or circumstances,

accidents may happen at any time and personal injuries follow, and it is in such cases that the law imposes upon those carrying on such business the duty of furnishing as far as can reasonably be done, safeguards against accidents. As applied to railroad companies as common carriers, in the conduct of whose business, in the very nature of the case, accidents by which personal injuries are received are likely to happen even where such business, generally speaking, is carefully carried on, the rule simply means that they must use such reasonable means or adopt such reasonable precautionary measures as will properly safeguard those who do business with them at their stations and upon their trains. In brief, the rule may be stated to be that where, in the conduct of a certain business, it must be known that unusual or uncommon danger must necessarily coexist with certain conditions, which are capable of being controlled to a large extent by the use of reasonable and available means, the law will hold casualties resulting from an omission to so control such conditions as among those which could "reasonably be anticipated" and against the happening of which, therefore, it was the duty of the person conducting such business to adopt and enforce precautionary measures.

Of course, everybody knows the increased danger to life and limb at railroad stations when such places are enveloped in darkness or not equipped with sufficient artificial light after the light of day has disappeared to enable persons having business there to guide their footsteps over the ways provided there for that purpose. And everybody knows that the safety of passengers in going to and from such stations in the night-time or in entering and getting off trains stopping there at night can be preserved largely by means of sufficient light to enable them to find the proper means of ingress and egress therein and therefrom. The accident whereby Mrs. Teale received the injuries complained of here was one of that class which must reasonably be anticipated will occur as the result of omission on the part of a railroad company to provide the requisite or sufficient light at its station to permit passengers leaving its trains at night to do so with safety, and the failure of the defendant in this case to do so reasonable and at the same time so manifestly a necessary act as furnishing the plaintiff with light sufficient

to enable her, by the exercise of due care, to guide her feet down the steps from the coach to the ground constituted negligence.

The next and, so far as is concerned the claim that the evidence does not support the verdict, the last question to be determined, is whether the plaintiff, in alighting from the train, was herself guilty of negligence which constituted the proximate cause of her injuries, and, furthermore, whether she assumed the risk incident to her attempt to reach the ground from the platform of the coach under the circumstances as described by her.

The evidence, as before shown, does not disclose the exact or particular cause of the plaintiff's fall to the ground, and, therefore, unless it can be said, as the argument of the appellant goes, that, from the fact that the plaintiff attempted to leave the coach in the intense darkness of that night while she was engaged in carrying a small valise in one hand and a suitcase of ordinary size in the other, and, under those circumstances, undertook to guide herself down the steps from the coach to the ground by taking hold of the guard rail with her left instead of her right hand, she was guilty of contributory negligence, then it is very clear that that question was one for the decision of the jury and that the verdict forecloses the review thereof by this court.

But it cannot be held that the circumstances referred to show contributory negligence. The plaintiff had reached her destination, and, obviously, she had the right to leave the train, with her valise and suitcase, by the usual means of egress in such case, and she adopted those means for making her exit. Although she was a woman well advanced in years, she was nevertheless in robust health, active, capable of performing and did perform, prior to the accident, the household duties for her family, and possessed excellent eyesight; and from these facts it is reasonable to infer that, under ordinary circumstances, she was capable of handling the small baggage she carried with her without any great inconvenience or trouble. She was thoroughly familiar with the ground about the depot and particularly in the immediate vicinity of the point where the coach in which she rode to Calistoga stopped on the occasion of the accident. She testified, as seen, that, before starting down the steps, she took

hold of the guard rail, thus "carefully feeling her way down." But it is suggested that she could have remained in the car until someone came to her assistance. There is no merit in that suggestion. She not only had a right to leave the coach at the time that she did leave it, but it was her duty to do so, since her contract with the defendant ended when the train on which she was riding arrived at Calistoga, her point of destination. Besides, there was, when she left the coach, no other person in said coach. Calistoga was the terminus of the road and the train crew had left the train—the conductor by means of the steps located between the front end of the smoking car and the rear end of the baggage car. It is, however, further suggested that, having found it very dark on the front platform of the car in which she was riding, she should have passed on and through the smoking car to the front platform thereof, and there made her descent to the ground. But there is nothing in this record indicating that the front platform of the smoking car was any better circumstanced as to light than the platform from which she descended. Everything about the track on which the train stopped, she said, was in total darkness, and, as stated, there is absolutely no evidence in the record that there was any light at the front end or platform of the smoking car or that she could have gotten off the train there more conveniently or with more safety than at the point where she did alight with the disastrous result as described.

What more the plaintiff could have done to reach the ground carefully and with safety under the circumstances by which she was surrounded, we are unable to apprehend or to suggest, and that she did not succeed in reaching the ground with safety or without sustaining injury to her body, was manifestly not occasioned by the want of due or proper care on her part but entirely to the untoward circumstances, of the defendant's own negligent creation, under which she endeavored to reach the ground—an act which she was not only entitled to do but which it was necessary for her to do.

Much of what has been said in the foregoing applies to the claim that the plaintiff, knowing and realizing the increased peril of attempting to descend the steps by reason of the intense darkness thereabouts, in doing so under such circumstances herself assumed the risk.

It cannot, of course, be doubted that the plaintiff, upon reaching the platform of the coach in which she was riding, fully realized and knew that, to attempt to go down the steps under the conditions which then surrounded her, would involve unusual peril. This is clearly evidenced by the care with which she undertook to do so. But this is by no means to say that she assumed the risk and must, therefore, bear the consequences of her act. It is true, as a general rule, that where a person injured, although the relation of master and servant does not at the time subsist between him and the party through whose negligence the injury is claimed to have been inflicted, knows and appreciates the danger of doing the act in which he received his injury, and, with such knowledge and appreciation of such danger, voluntarily puts himself in the way of it, must be deemed to have assumed the risk. (1 Thompson on Negligence, sec. 184.) But, in this case, it cannot justly be said that the plaintiff *voluntarily* put herself in the way of the danger. The situation of danger in which she was put was caused by the negligence of the defendant, and the circumstances of her surroundings were then such as that she was compelled either to leave the coach or remain therein until, perchance, assistance might come to her. The case here is not, in principle, unlike that of an inmate of a burning building who has sustained injuries while in the act of escaping therefrom. In such a case, in an action for personal injuries, although the plaintiff full well knew the great peril that would attend his effort to so escape, the defendant, charged with negligently or purposely firing the building, would not for a moment be heard on a plea of assumption of risk.

As before stated, it was not only the duty of plaintiff but her right to leave the coach upon the arrival of the train to which it was attached at her point of destination, and it was equally her right and duty to do so by the usual means provided for that purpose.    Of course, it is always the duty of a passenger, when alighting from a train, to exercise that care which an ordinarily careful and prudent person, having due regard to his safety, would exercise. The plaintiff in this case was required to exercise that degree of care which the unusual circumstances under which she was compelled to leave the train required, and this the evidence showed that

she did. As has been shown, the evidence does not disclose that there was any other safer or more convenient way by which she could have left the train. There was no one at hand to assist her and she simply was forced to do the best thing that the circumstances would permit her to do.

In short, our conclusion is that the whole case, as it is presented by the record, upon the question of the alleged negligence of the defendant and that of contributory negligence and the assumption of risk imputed to the plaintiff, was one entirely for the jury.

A careful examination has been given the authorities cited by counsel for the defendant. It is not regarded as necessary, further than has already been done, to analyze or otherwise consider them in this opinion. They will be found, upon examination, to represent conclusions from facts very materially different from those here, and that they are, therefore, not in conflict with anything said or the result reached by this court in this opinion.

The complaint regarding the instructions, given and refused, is untenable. The charge of the court was brief, but it involved a statement in clear language of all the rules essential to a proper and just consideration of the evidence by the jury.

It is said, however, that the instructions with regard to the duty of the defendant to furnish at its station such light as might be necessary for the protection of persons having business with the company there against accidents are contradictory. This criticism has its foundation in the fact that in one part of its charge the court in effect declared it to be the duty of the company to maintain *sufficient* light at its stations, while in another part thereof it said that the company was required to keep its stations *properly* lighted. It is the contention that the court thus gave to the jury two different standards of the duty which the company was required to observe in that particular. But we think the criticism is devoid of merit. The court, among other things, instructed the jury that it was the duty of the defendant to "furnish such a light at its depot as an ordinarily careful and prudent person in the same relation and under the same conditions and circumstances would have furnished," and, again, that it was its duty, on the occasion of the accident, to have fur-

nished such lights at its depot at Calistoga as to have enabled plaintiff to safely alight from its train. The jury, as men of intelligence, and keeping in mind and considering the charge of the court in its entirety, must be assumed to have understood the terms, "properly lighted," "sufficiently lighted" and "insufficient light," as used in the court's charge, to mean such light or a want thereof "as an ordinarily careful and prudent person in the same relation and under the same conditions and circumstances would have furnished." Although the words "properly" and "sufficient" cannot be said to be, strictly, synonymous, or so to a degree that they may be uniformly used interchangeably, it is plainly manifest that in the connection in which they were used in the instructions of the court, the terms "properly lighted" and "sufficient light" meant precisely the same thing and could not as thus used be reasonably interpreted to mean anything more or less than what the court had elsewhere in its charge in effect said, that the company was required to furnish such light as it was necessary to keep under the conditions generally existing at and about its station at Calistoga for the due protection of its patrons having business at night at said station. In other words and briefly, a "proper light" or a "sufficient light," within the evident meaning of those terms as they were used in the court's charge, was that degree of light which the court had correctly told the jury it was the duty of the defendant to furnish, in view of and considering all the conditions surrounding the station at Calistoga, in point of the character and extent of its traffic there.

The instruction, numbered 8 in the record, which the defendant requested but the court rejected, was properly disallowed. It would have told the jury, if read to them, that if they should find "that the plaintiff knew that it was dangerous for her to attempt to get off the train in the extreme darkness, and would not have attempted to do so but for the fact that she was perfectly familiar with the station, its platform and surroundings, and believed, on account of such knowledge, that she could alight in safety," then they should find that she assumed the risk of so attempting to alight, and "your verdict should be for the defendant even though you should find that the defendant was negligent in providing lights at its station." What we have heretofore said con-

cerning the application of the doctrine of the assumption of risk to the facts of this case constitutes a reply to the claim that the court erred by its refusal to give the foregoing instruction. Under our conception of the situation here as presented by the evidence, the instruction would have been misleading, and, indeed, erroneous.

The principle declared in the rejected instruction, numbered 9, was in substance given in the court's charge, and the refusal to allow said instruction was, therefore, not prejudicial.

We have now examined the principal assignments of alleged error presented on these appeals, and have therein found no occasion for remanding the cause.

The judgment and order are, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 10, 1913.