[Civ. No. 1667.    Third Appellate District.—May 17, 1917.]

ELNORA L. SELLARS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

RAILROAD CORPORATION—DUTY OF COMPANY AND PASSENGERS—DEGREE OF CARE REQUIRED.—A railroad company is required to exercise an extraordinary and unusual degree of care as to its passengers while in transit, but as to passengers not actually in transit but on the railroad premises or property, the railroad is relieved of the extraordinary degree of care required of it toward passengers in transit, and the passengers are relieved of the extraordinary degree of care required of persons not bearing such relation to the railroad company; and the measure of duty in such case of the railroad company toward the passenger, and of the passenger toward the railroad company, is that each should exercise ordinary care.

ID.—INJURY TO RAILROAD PASSENGER—FALL IN ATTEMPTING TO REBOARD TRAIN AT EATING-STATION—LACK OF ORDINARY CARE—QUESTION FOR JURY.—In an action for injuries received by a passenger on a railroad train while in the act of going upon the platform of her car after having left the same for the purpose of procuring a meal at one of the company's eating-stations, the question whether the defendant failed to exercise ordinary care in not providing a porter to assist persons in leaving and returning to the car, and in not providing a stool or other contrivance to break the distance from the steps of the car to the ground, was properly submitted to the jury.

ID.—ARGUMENTATIVE INSTRUCTION.—An instruction that a railroad company cannot be expected to treat its passengers as children, or to put them under restraint, is properly refused, as it is misleading, obscure, and commonplace.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Borton & Theile, for Appellants.

Kaye & Siemon, for Respondent.

BURNETT, J.—The action is for damages caused by the negligent failure of the Railroad Company to provide safe

and proper means of ingress and egress to and from the train on which plaintiff was a passenger, and the Southern Pacific Company is really the only defendant in interest. The plaintiff, who was a somewhat elderly lady of over sixty, bought a ticket from Los Angeles to Exeter, Tulare County, over the railway operated by said company. The train arrived at Bakersfield, an intermediate point and eating-station, at about 6 o'clock the following morning. An announcement for breakfast had been made by the company and plaintiff, with other passengers, left the train for that purpose. The eating-room at the station was crowded, however, and plaintiff, without getting breakfast, returned to her car. It was a long train, and when the stop was made, the car in which plaintiff had been riding did not reach the platform, but stood down in the switch-yard quite a distance from the depot at a point where the rails of a switch extended outward from the main track and over the course plaintiff was required to pass in leaving and entering her car. There was quite a frost that morning which may have contributed somewhat to the accident. The rails of the switch extended several inches above the ground, and no porter or other person was present to assist plaintiff in leaving or returning to the car, nor was there provided for passengers any stool or other contrivance to break the distance from the steps of the car to the ground. In attempting to board the car plaintiff fell heavily to the ground and sustained serious injuries, for which a jury held the Railroad Company liable and awarded her substantial damages. Plaintiff's account of the accident is as clear as could be expected under the circumstances, and we may quote from her testimony as follows: "There was no platform at the place where I got on the car, nothing but switch rails coming in, converging just where I went to step up. I raised my hand to catch hold of the rails but my left foot slipped on that rail—I remember that very distinctly—it was frosted. The rails seemed to stick up too far. I should think they were eight or ten inches above the ground. Just as I was raising up, putting my hand up to catch hold of the rail or handle on the car, this left foot slipped and dumped me down this way almost under the train, and my arm doubled right under, broke straight off, and the bones went down in that ground." In her cross-examination she related the details a little differently, as follows: "I was just reaching up to catch hold of the

rail.  I think I caught my heel under the rail, I was not stand-
ing on the rail, I was walking along.  I was just reaching my
hand up and taking a step when I stumbled.  This must have
been the last step.  I think my right foot was on the ground
and I was taking a step with my left foot.  I had not lifted
my right foot up.  It was my left foot which caught.  I don't
know whether I slipped or stumbled.  I noticed the frost par-
ticularly.  I think I stumbled against the first rail of the
switch and fell right down in the dirt just over that one rail.
The only way I can tell the distance from the rail over which
I stumbled is this—I was standing on my right foot, and step-
ping with my left foot, and there would have been one addi-
tional step with the right foot before I got on the platform.
I didn't intend to step on the rail.  I noticed the rail.  My
purpose was to step over the rail.  I don't know whether the
heel of my shoe caught or slipped.''

From these statements it is argued by appellant that the
accident occurred before she reached the car.  Hence, it is
contended that the absence of a porter or of a stool must be
eliminated from consideration as in no wise connected with
the injury, and that the failure to have the car contiguous
to the platform is of no vital importance, since her fall was
clearly due to her own negligence.  Such would be the only
reasonable conclusion, probably, if the accident occurred while
she was crossing the yard and before attempting to board the
train.  We are not justified, however, in adopting this theory
of the facts.  Even if there were material inconsistencies be-
tween her testimony on direct and on cross-examination, the
jury might accept the statements made during the course of
the former and reject those of the latter.  This follows, of
course, from the familiar responsibility and duty as to the
evidence imposed upon the jury by the law.  Moreover, there
is no irreconcilable conflict in her statements.  As to the few
minor details wherein an apparent discrepancy exists, her
testimony is not at all surprising, nor does this circumstance
discredit her veracity as a witness.  It is quite probable she
did not know whether her foot was actually upon the rail, or
whether she stumbled or slipped, or just how far she was from
the steps of the car when the accident occurred.  If she had
pretended to know these things and had attempted to state
them decisively, there would be greater reason for distrusting

her than appears in the record.   It is true, though, that she states positively, both in the direct and in the cross-examination, that she "was just reaching my hand up" to take hold of the rail, when she slipped and fell.   Indeed, accepting her as a credible witness, which the law requires of us in view of the finding of the jury, we necessarily conclude that she was in the *act* of going upon the platform of the car and was necessarily very near the steps.   As to whether she stumbled or slipped it is probably of no great importance.   She may have stepped upon the rail of the switch in order to reach the lowest step of the car and slipped off in consequence of the frost, or she may have stumbled over said rail as she was reaching forward, but, at any rate, it is quite probable, if not almost certain, that she would not have so fallen if there had been a platform or stool next to the car, or if a porter had been present to render assistance in her efforts to re-enter the car.

This naturally suggests the consideration as to the duty of the Railroad Company in providing for such contingency. Out of the situation also comes the inquiry whether the care exacted by the law is that known as *reasonable* or the *highest degree* of diligence.   Respondent contends that at the time of the accident the relation of carrier and passenger existed, and therefore the same care was required as though she had been seated in the car.   She cites many authorities to the point that "a passenger leaving the train for temporary and proper purposes, such as exercise, refreshment, or relief from the fatigue of travel while the train is stopping, continues to be a passenger during such absence from the train."   Of course, he is still a passenger, but it does not necessarily follow that he is entitled to the same degree of care as while on the train.   There are some decisions, however, so holding, among them being *Atchison, T. & S. F. R. Co.* v. *Shean,* 18 Colo. 368, [20 L. R. A. 729, 33 Pac. 108], wherein, after referring to the general rule as to utmost care required of a railroad company as to its passengers, it was said: "The same duty is imposed upon the company toward a passenger while, on a continuous journey, he is going to and returning from the eating-stations provided by the company for the accommodation of passengers."

The doctrine of other cases to the contrary is summed up in the following quotation from 6 Cyc. 605: "A passenger by railroad is entitled to protection against danger, at the station-house or waiting-room, on the platform and in getting upon or alighting from the train, but the peculiar hazard of railway travel, requiring high speed by the use of the dangerous agency of steam, is not involved on the premises of the railroad company, or while getting on or off the trains, and therefore in these respects the care required for the protection of the passenger is reasonable, rather than the highest or extraordinary care."

However, the question is rather of academic than of practical importance here, and we need not concern ourselves about the peculiar terminology to be employed. It is at least clear that, generally speaking, there is a difference in the danger involved, and the opportunity and capacity to protect himself, between the situation of the passenger while traveling on the train and the other situations mentioned, and we think the authorities generally recognize the rule in cases like this to be that the carrier is held to "ordinary care and ordinary prudence."

A case involving the same principle as this, although different in its facts, decided by this court, is *Teale* v. *Southern Pacific Co.*, 20 Cal. App. 570, [129 Pac. 949], wherein the duty of a common carrier to a passenger alighting from the train was carefully considered and the decision is of interest here. We need not quote from it or from other decisions, but we think appellant is close to the mark in the affirmation of these principles: "1. A railroad track is a known place of danger and persons going uninvited upon the track or railroad premises must exercise an extraordinary degree of care. 2. As to its passengers while in transit, a railroad is operating a powerful and dangerous agency and must exercise an extraordinary and unusual degree of care. 3. As to the passengers of the railroad company not actually in transit but on the railroad premises or property, the railroad is relieved of the extraordinary degree of care required of it toward passengers in transit and the passengers are relieved of the extraordinary degree of care required of persons not bearing such relation to the railroad company, and the measure of duty in such case of the railroad company toward the passenger and of the pas-

senger toward the railroad company is the ordinary and usual one, viz., that each should be in the exercise of ordinary care."

Thus expressing our opinion, we are but following the view of the lower court as to these abstract principles, and we may go a step further in the declaration that whether the failure of the company in the respects already indicated was and is sufficient to constitute the want of ordinary care involved a question of reasonable controversy, and it was therefore properly submitted to the jury for determination. It has become almost a commonplace of the law that the question of negligence is seldom "so clear from doubt that the jury cannot fairly and honestly find for the plaintiff," and that "it is not the duty of the court in such cases, any more than in any other, to usurp the province of the jury and pass upon the facts." (*Jamison* v. *San Jose etc. R. R. Co.*, 55 Cal. 593.)

As to the duty of a railroad company to take every reasonable precaution for the safety and comfort of its passengers in alighting from and boarding its cars, of course, there is no controversy. Nor can there be much doubt that this general rule leads to the obligation to furnish platforms or stools or assistants at main stations like the one at Bakersfield. Where there is a platform it may be said also that it is the duty of the company to make it available for the passengers or, if not, to furnish one of the other suggested aids. At least, it is not unreasonable to say that its failure in these respects may constitute negligence and form the basis of an action for damages. Many cases are cited to illustrate the principle, to some of which we may briefly refer.

In *Peniston* v. *Chicago etc. R. Co.*, 34 La. Ann. 777, [44 Am. Rep. 444], the plaintiff sustained injuries while returning to the train after alighting for his meal. The railroad company was held to be negligent by reason of its failure to furnish sufficient light for the safety of the passengers. Therein the general principle is declared that "railway companies are under the legal obligation to furnish safe and proper means of ingress and egress to and from trains, platforms, station approaches, etc."

In *Memphis & Charleston R. R. Co.* v. *Whitfield,* 44 Miss. 466, [7 Am. Rep. 699], defendant's train of cars, on which plaintiff was a passenger, having reached the station at which plaintiff was to alight, passed several hundred yards beyond the depot, stopping at an unusual place, where it was low and

icy. Plaintiff demanded of the conductor that the train should be backed, which was refused. In attempting to alight, plaintiff dislocated his knee. Defendant was held to be chargeable with negligence.

In *Delamatyr* v. *Milwaukee & Prarie du Chien R. R. Co.,* 24 Wis. 578, the steps attached to the platform of the car had not been drawn up properly so that plaintiff could not reach the station platform by stepping down in the usual manner, but was obliged to jump some distance and was injured. In holding the railroad company guilty of negligence, the court said: "Of course, it is the duty of the company to afford passengers reasonable facilities for alighting from the cars, both by reasonably safe platforms and by stopping the train in such a manner that they may avail themselves of it without unnecessary exposure."

In *Cincinnati N. O. & T. P. Ry. Co.* v. *Bell* (Ky.), 74 S. W. 700, a passenger, on reaching her destination, attempted to step from the platform of the car to the ground and she fell, spraining her ankle. The lower step of the car platform was twenty-three inches above the level of the station platform. It was held that it was negligence for the railroad company not to have a stool for the use of the passenger or a porter to assist her in alighting.

In the Teale case, *supra,* the alleged negligence consisted in the failure to have a sufficient light at the station to aid the passenger in getting off the train in safety. The duty of the railroad company to furnish such light at their stations in order to promote the safety of the passengers was strongly emphasized.

To these and other authorities the present case is analogous, and we may add that the general practice to furnish platforms and also stools and porters for such trains is a significant recognition of the duty of the railroad company in that regard, and an implied characterization of their omission as negligence on the part of the carrier.

We think it equally apparent that the question of contributory negligence was properly submitted to the jury, and that their finding adverse to appellant cannot be said to be unsustained. This consideration lies, manifestly, close to the other. If the first be debatable so must be the second. We cannot hold that plaintiff was at fault in attempting to board the car as she did. We cannot say that she was reck-

less or indifferent to her own safety, or that she attempted in an unusual or reprehensible manner to re-enter the train. She was not required to enter another car adjacent to the platform, and then pass from that to the one in which she was traveling. If she had been advised to do so a different question might be presented.

In the determination of this issue as to her want of due care it was proper, of course, for the jury to take into consideration the age and sex of the plaintiff, as well as the surrounding facts and circumstances. In view of the whole case, we are satisfied that there was ground for the conclusion that she exercised ordinary care, and that it cannot be held as a matter of law that she was guilty of contributory negligence.

The case of *Falls* v. *San Francisco and North Pacific R. R. Co.,* 97 Cal. 114, [31 Pac. 901], cited by appellant, is not controlling here. That was decided upon the proposition that the railroad company was not properly chargeable with negligence in using the same platform for the depositing of freight, and for the accommodation of passengers, at a flag-station established for the convenience of a sparsely settled district wherein was made allowance of sufficient room for passengers. Therein the court followed *Cincinnati etc. R. R. Co.* v. *Peters,* 80 Ind. 172, in which it was declared that "At a mere way or flag station, where trains do not regularly stop for the reception and discharge of passengers and only stop when they are flagged, or to discharge a special passenger, a passenger need not expect or rely upon the company's having furnished a platform or other convenient place for the reception and discharge of passengers."

Appellant complains of the ruling of the court in sustaining an objection to each of these two questions asked of Charles L. Jones, an employee of appellant, who had been yardmaster for nine years: "During that period of time how many accidents have you known of having been caused by slippery or frosty rails?" and "During this period of time how many accidents, if any, have you heard of or known of by people stumbling over rails?" In support of its contention, appellant cites section 446 et seq., volume 1, of Wigmore on Evidence. The learned author cites instances wherein similar evidence was presented to different courts, although, as admitted by appellant, "Most of such authorities, however, are

instances where other previous accidents are admitted, rather than the lack of other previous accidents.'' But, conceding that there is no difference in principle, between the admissibility of such positive and negative evidence, it is sufficient to say that before such testimony can be introduced it should be shown, or an offer made to show, that the conditions were similar. (Wigmore on Evidence, sec. 442.) This was not done and the ruling was therefore not erroneous. Moreover, if it should be granted that the court committed error, it was not grave enough to justify a reversal. If the witness had testified that he had never known of a similar accident before, it would not, in all human probability, have affected the verdict of the jury, nor would it change the legal aspect of the case here.

There was no error in refusing the following instruction: ''A railroad company cannot be expected to treat its passengers as children, or to put them under restraint. Passengers must take the responsibility of informing themselves concerning the every day incidents of railway traveling, and the company could do business upon no other basis.'' Many objections could be made to it. It is sufficient to say that it is argumentative, obscure, and commonplace.

Another instruction, based upon the Falls case, *supra,* was refused. It endeavored to expound the legal doctrine as to the liability of the carrier to one who by express invitation or otherwise has come upon the carrier's premises for the purpose of transacting business. It was misleading, argumentative, and inapplicable. As far as the rule of reasonable care therein set forth is concerned, it was amply covered by other instructions. It will be sufficient to quote the following, given on request of defendant: ''There is no extraordinary or unusual degree of care imposed upon a railroad company in keeping up its stations and station grounds so far as concerns the rights of persons not actually being carried at the time on its trains. The burden that rested upon defendants in the case at bar, in the care of their stations and station grounds, was merely that they should use ordinary care. The plaintiff was obligated to the same duty to avoid the accident, namely, that he should use ordinary care.''

The complaint as to certain instructions which were given is also without merit. They were as favorable to defendant as the law permitted. They were within the issues and ap-

plicable to the evidence. Indeed, there seems no ground for just criticism as to the action of the court in any respect.

The judgment and order are affirmed.

· Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 16, 1917.