**ALASKA FREIGHT LINES, a corporation, Appellant,**

v.

**Raymond HARRY, Appellee.**

No. 14302.

United States Court of Appeals,
Ninth Circuit.

March 3, 1955.

Evans, McLaren, Lane, Powell & Beeks, Gordon W. Moss, W. T. Beeks, Seattle, Wash., Collins & Clasby, Walter Sczudlo, Fairbanks, Alaska, for appellant.

Julien A. Hurley, George B. McNabb, Jr., Fairbanks, Alaska, for appellee.

Before HEALY and BONE, Circuit Judges, and HAMLIN, District Judge.

HAMLIN, District Judge.

This is an action for damages by Raymond Harry, Appellee, herein called plaintiff, against Alaska Freight Lines, a corporation, Appellant, herein called defendant, for injuries to plaintiff alleged to have been caused by the negligence of defendant in the operation by defendant of a tractor and trailer-type truck upon an Alaskan highway in December, 1951.

The District Court sitting without a jury found that the defendant was negligent, and rendered judgment in favor of plaintiff in the sum of $16,356.53.

The evidence at the trial disclosed that on December 13, 1951, plaintiff was driving his International panel truck southbound on the Alaska Highway on a trip from Fairbanks. Between 7 and 8 p. m. plaintiff met a truck belonging to defendant which was proceeding at about 40 miles per hour in an opposite direction upon the highway. While the two vehicles were passing each other, the windshield upon the driver's side of plaintiff's vehicle was struck, breaking the glass thereof, and causing injuries to the plaintiff which resulted in the removal of his right eye. The evidence showed that the defendant operated trucks along the Alaska Highway from and between Anchorage, Fairbanks, Seward and Valdez. The truck that allegedly caused the injuries to plaintiff did not stop, the driver Crawford stating that he did not know that an accident had happened. A truck of the defendant which was following the truck driven by Crawford was stopped by the plaintiff who reported what had happened and the information was relayed on ahead to the two trucks of the defendant's which had preceded the truck stopped by the plaintiff.

The plaintiff testified that while at the time of the accident he did not know what it was that struck the windshield, he did know "there was something come off from the truck" and that he told the driver following the truck in question that "it was an object that came through my windshield and shattered my windshield." He stopped his car and saw that the windshield on the driver's side was nearly all gone; just a few jagged edges around the edge of the driver's windshield was all that was left. The windshield on the other side of the car was undamaged. The plaintiff was taken to Half Way Inn, a nearby roadhouse, where, he testified, "They cleaned me up, tried to get the ice cleaned out, and patched up my ear." In answer to a question, "Were you suffering?" the

plaintiff answered, "I was, from the ear, and glass and ice in my eyes." At the time of the accident, the temperature was 26° below zero and there was wind blowing in gusts up to 30 miles an hour.

While plaintiff was in the hospital, the defendant went out to Half Way Inn, got plaintiff's truck, drove it to Fairbanks, replaced the broken windshield and returned the truck to the plaintiff.

The driver of the defendant's truck, William W. Crawford, called on the plaintiff two or three days after the accident, in the hospital, and in discussing what had occurred, the plaintiff testified on cross examination that Crawford told him that "it was his idea that ice had come off from the top of the truck, because he has seen it fall off on the road."

"Question: 'You are contending now in talking to Mr. Crawford he told you it was ice from his truck?'

"Answer: 'Yes.'

"Question: 'You are positive of that?'

"Answer: 'That is what he told me.'"

The evidence showed that the truck in question had come from Anchorage to Tok Junction, a distance of some 350 miles and that it took something between 16 and 24 hours to make this trip. Along the way, the driver testified that he might have stopped over night six to ten hours en route from Anchorage to Tok. Crawford said that he did not recall whether or not it was snowing during that trip. Crawford stated that they had cleaned the top of the trailers off in Anchorage, and that he looked at the truck at that time and that there was no ice upon it. When asked as to why he looked at the truck at that time to see whether there was any ice or snow on it, he answered, "I didn't want it to fall off and I don't want the extra weight to pack." In testifying as to whether ice or snow was heavy on the top of the truck, he said, "I suppose it is heavy; it depends upon whether it is wet or dry snow." There is no evidence as to whether the driver saw ice and snow on the truck after it left Anchorage. He testified, "I don't remember whether I looked over the truck at Tok Junction or not, but I always do before I commence a trip." Tok Junction was a stop that he made one or two hours before the passing of the plaintiff's truck. Another driver of defendant's trucks testified that he had seen ice and snow on trucks, and that every time it was there it was taken off. This driver testified that the truck in question driven by Crawford and his truck and the third truck stopped at Tok Junction for coffee, and that he did not see any snow and ice on the roof of the truck at that time, but he also stated that he did not observe the top of the truck at that time to see if there were any accumulations of snow or ice.

It was defendant's theory that the most probable cause of the accident was a rock thrown up by the passing trucks, and some evidence was produced showing that upon other occasions rocks had been thrown up as trucks or automobiles passed each other. No one testified, however, to having seen a windshield broken in the manner in which the one in question was broken, as a result of a rock or stone.

The plaintiff testified the highway was mostly covered with snow "outside of just small gravel on the highway", and that the snow was packed.

A highway patrol officer testified that it was his duty to and that he did patrol this stretch of the road around the time of the accident, and that he recalls no boulders near the place of the accident, that according to his recollection it was merely the conventional size gravel.

An expert was produced who had been for 22 years in the automobile repair business, including the repair and installation of windshields. He testified as follows: (1) "It is impossible to push a windshield out with a small rock." (2) "If a rock of 5 or 6 inches in diameter were to strike the windshield with sufficient force to come directly through it, the hole would be about the size of the rock * * * but the remainder of the glass would remain in the frame." (3)

"It would take something about one-half the size of the windshield to knock a complete windshield out. A small object will go through it." (4) "He had never in 22 years of experience in this business had occasion to repair a windshield in which a rock had destroyed the entire windshield or knocked 90% of the windshield from its frame."

The evidence also showed that no rock was found in the truck after the accident.

This testimony and the physical fact of the amount of glass broken out of the windshield would not seem to support defendant's theory.

The District Court in its findings of fact found that while plaintiff was passing defendant's tractor and trailer that a large chunk of ice fell from the top of the trailer, hit the windshield of plaintiff's truck on the driver's side, and drove all of the glass from the windshield into the truck, and thus caused the damages in question. The lower court further found that the injuries sustained by the plaintiff were due to the carelessness and negligence of the defendant in allowing ice to accumulate upon the top of the trailer so that the same could jar loose and fall from the top of the trailer, and that the accident and the resultant injuries were the direct result of the carelessness and negligence of the defendant.

Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., provides that findings of fact in actions tried without a jury "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court upon the entire evidence is left with a definite and firm conviction that a mistake has been committed. U. S. v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; U. S. v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S. Ct. 690, 96 L.Ed. 978. Upon a consideration of the entire evidence in the case, we cannot say that we believe that the finding of fact of the trial court as to the cause of the accident was "clearly erroneous" or that this court on considering the entire evidence is left with a definite and firm conviction that a mistake has been committed. There was circumstantial evidence from which the trial court could determine that it was ice from the top of the truck and trailer that struck the plaintiff's windshield, causing his injuries. In fact, no other reasonable conclusion from all of the evidence would seem to be proper.

Defendant further contends that even though we accept the finding of the District Court that ice falling from the top of the truck caused the injuries, negligence has not been established on the part of the defendant. He argues that there was no foreseeability of harm to other motorists in the driving of this truck and failing to remove the ice accumulated on its top, and that even if risk of harm was foreseeable, it was not an unreasonable risk of harm, because the magnitude of the risk was not such as to outweigh the social utility of the defendant's conduct. His contention, therefore, is based on the premise that two of the essential elements of negligence are (1) the foreseeability of harm which the defendant should realize as accompanying his conduct, and (2) the creation of a risk of harm which is unreasonable.

In support of the first of these premises, defendant cites the following passage from 155 A.L.R. at page 157: "It is well settled that foreseeability or probability of harm is an essential element of negligence. The duty to use care and the liability for negligence depend upon the tendency of the acts under the circumstances as they are known, or should be known, to the actor. Generally an act or omission does not constitute actionable negligence unless a reasonably prudent person placed in the position of the actor would have foreseen the probability of harm resulting from his acts or omissions."

We agree that this is a rule of the law of negligence, A.L.I., Restate-

ment of Torts, § 284 comment (a), § 289 comment (b); Prosser on Torts, 1941, pp. 220–222, 340–347; and see pp. 311–315; Vol. 65, C.J.S., Negligence, § 5, pages 354–364; Munsey v. Webb, 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162. But we cannot agree that as a matter of law the element of foreseeability was not present here. Defendant urges that this event was too remote to be guarded against in the exercise of due care, and to that end, he states that such a casualty had never been known to happen before. But the mere fact that a similar accident had not been brought to the attention of the defendant, does not remove his conduct from the scope of negligent conduct. Teale v. Southern Pacific Railway Co., 1913, 20 Cal.App. 570, 129 P. 949; Rocca v. Tuolumne County Electric Power & Light Co., 1926, 76 Cal.App. 569, 245 P. 468; Cox v. Central California Traction Co., 1927, 85 Cal.App. 596, 259 P. 987. It has been said that—

" * * * (M)erely because a particular accident has not happened before does not render it of that class which may not be 'reasonably anticipated'; for if, in the conduct of a certain business it should be known that unusual or uncommon danger * * * must necessarily coexist with certain conditions, responsibility attaches for a failure to control such conditions. And where injury could reasonably have been anticipated, it is not a prerequisite to liability that the wrongdoer should be able to anticipate the precise form of the consequential injury. Whether an injury should have been anticipated by the defendant as the result of his acts depends upon the facts and circumstances of each case, and is ordinarily for the jury to determine." 19 Cal.Jur. 563.

In this case, the defendant was operating a business in Alaskan winter weather where temperatures went at least to 26° below zero, where trailers and trucks were left out at night, and where the possibility and indeed the probability of snow and ice forming on the tops of these trucks was one which the defendant was familiar with. It was the practice of the defendant at various places in the operation, such as Anchorage, Seward and Valdez, to regularly clean the tops of the trucks and trailers by removing therefrom ice and snow which had collected. Shovels and brooms were provided for the purpose of cleaning off accumulations of ice and snow, and the truck driver in question in this case stated that he had performed these cleaning operations for defendant in Valdez. He also testified that he looked on the top of his truck in Anchorage to see if there was any ice there because "he didn't want it to fall off * * *." If it was proper and necessary to clean ice and snow from the trucks and trailers at the beginning of a trip of some 350 miles, certainly it must be common knowledge with the operators of the freight lines that during that trip which took from 16 to 24 hours and during which the truck was parked over night for a matter of six or ten hours, that ice and snow might accumulate on it during that time. And the testimony of the driver of the truck was that he did not clean any ice and snow off after leaving Anchorage or at Tok Junction one or two hours before the accident and that he does not recall whether or not he looked at that time to see whether there was any ice or snow accumulated on the truck or trailer. Whether or not it was negligence for him to fail to make the necessary observation when he was stopped shortly before the accident would seem to be a question for the trier of fact. Certainly it would appear that if ice and snow were accumulated on the top of a truck that it could reasonably be anticipated that such ice or snow might be dislodged by the truck traveling along the Alaska roads at a rate of speed of approximately 40 miles an hour, and that if it was so dislodged, that it might cause injuries to persons in the immediate vicinity.

In regard to the second premise, above, defendant cites the Restatement of Torts, § 289 comment (b), for

the proposition that negligence can only be predicated on a risk of harm which is unreasonable. Again, we agree that this is a correct statement of the law of negligence. Restatement of Torts, supra, § 282 comment (b), § 291, § 292; Prosser on Torts, supra, pp. 222–223. But again we must disagree with the conclusion pressed upon us by counsel for the defendant. There is nothing in the record to show that the satisfactory operation of defendant's trucks would be impaired by the observation of this duty to use due care in the removal of ice which is likely to fall off and injure others. Nor do we think that the likelihood of injury is so remote and so improbable that the imposition of this duty upon the defendant is an undue burden. The truck in question actually stopped twice during the trip. And, as stated above, the testimony of the truck driver showed that he was accustomed to inspecting the top of the truck when it left Anchorage, that he knew of the practice of cleaning off the top of the truck when it left Anchorage, and that he himself had cleaned off these trucks at Valdez. For these reasons, we are not persuaded that the social utility of driving these trucks free of the duty to clean them of ice outweighs the value of protecting those interests which are threatened by such conduct. Therefore, we must conclude that the risk of harm attendant upon the defendant's conduct is an unreasonable risk of harm.

█ Defendant complains that the trial court erred in admitting the testimony of a highway patrol officer that after the accident he had seen trucks of defendant upon the highway with snow and ice on them, and that on one such occasion he saw a chunk of ice two feet in diameter and several inches thick fall from a truck of the defendant onto the traveled portion of the road in front of the car in which the officer was driving. While this testimony would not be notice to the defendant of the fact that snow and ice did fall off from the trucks and trailers, nevertheless it would have some probative value upon the issue as to whether it was possible for ice and snow to fall off under those circumstances. We believe it was not error to admit this testimony.

█ Defendant also complains that it was error to permit the plaintiff to testify concerning a visit he had made to the office of the attorneys for the defendant and in the course of which visit a question was asked him as to what figure he would settle for. However, the start of this conversation was upon cross examination of the plaintiff by the defendant's counsel in which he asked him as to certain statements that he contended that the plaintiff had made to him. On re-direct examination, the plaintiff's counsel asked plaintiff concerning the remainder of the conversation, which included some of the remarks in reference to settlement. The plaintiff testified that no offer was made by either side and that no admission of liability was made by the defendant. Under the circumstances, we see no error in the occurrence.

This court being of the opinion that there was substantial evidence to support the findings and the judgment of the District Court, the judgment is hereby affirmed.