HENRY SMITH *v.* HAMAKUA MILL COMPANY, Ltd.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 6, 1903.　　　DECIDED APRIL 7, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A mere *scintilla* of evidence is insufficient to support a verdict.
The verdict in this case held to be unsupported by evidence.

OPINION OF THE COURT BY PERRY, J.

(Galbraith, J., Dissenting.)

This is an action of ejectment brought to recover an undivided one-fourth interest in the ahupuaa of Koholalele, Hamakua, Hawaii, containing an area of about 6330 acres. At the first trial a verdict was directed for the plaintiff, but this was set aside by this Court on the ground that evidence had been adduced sufficient to support a verdict for the defendant. The

second trial resulted in a verdict for the plaintiff and the case now comes to this Court on a number of exceptions, only two of which, however, are relied upon. Of these, one is to the verdict as being contrary to the law and the evidence and the other to the overruling of a motion for a new trial. The only question is whether or not there was sufficient evidence to support a verdict for the plaintiff.

First, as to the paper title. Undisputed evidence shows that the ahupuaa in controversy was granted by L. C. A. 26B., R. P. 4527, to Kailakanoa (w) and upon the latter's death passed to her half brother Huakini, who was the son of Kailakanoa's mother, Kapehe the first, but by a second and different husband, Kuauamoa; also that from Huakini the land descended, one half to his widow, Hoomana, and the other half to the heirs, by right of representation, of the two sisters of his mother, that is to say, one fourth to Hanakaulani Holt, the grand-daughter of Paele, sister of Kapehe the first, one eighth to Kapehe the second, daughter of Keaka, sister of Kapehe the first, and one eighth to the descendants of Kapau, brother of Kapehe the second. The plaintiff's evidence, undisputed, as it is reported in the transcript now before us, further shows that Kapau had two children, Kapehe the third and Kailakanoa the second, that these two children survived Huakini, that Kapehe the third left surviving her as her sole heirs two children, Kealakoiula (w) and Peleki (w), that Peleki left surviving her, as her sole heirs, her husband Aalaioa and her sister Kealakoiula, and that Kealakoiula and Aalaioa conveyed by deed to plaintiff all of their right, title and interest to the land in question. It is claimed for the plaintiff that the testimony is incorrectly reported in the transcript in so far as it makes it appear that the "children" of Kapau survived Huakini and that the testimony in fact was that of the descendants of Kapau, only his "grand-children" had survived Huakini. Upon the transcript as it stands, the evidence is not capable of being so read. Further, no evidence whatever was adduced tending to show the time of the death of Kailakanoa the second with reference to that of Kapehe the third or any other facts from which the jury could have found that all or

any part of the interest of Kailakanoa the second passed at her death to Kapehe the third or to the latter's children and thus through her or them to the plaintiff. In other words, the burden of proof being upon the plaintiff and the latter being obliged to rely for a recovery upon the strength of his own title and not upon any weakness in that of the defendant, the evidence on the subject of pedigree was at best insufficient to support a verdict for plaintiff for any more than an undivided one-eighth interest, that is to say, for one half of Kapehe the second's one eighth as it passed through the descendants of Kapau, and for one half of the one eighth which came to the children of Kapau directly from Huakini at his death.

This point was not raised by counsel either at the trial or in this Court and evidently escaped the notice of the trial judge also for the latter gave the jury a direct instruction to the effect that the estate of Huakini at his death passed, one half to Hoomana, one fourth to Kapehe the second and the grand-children of Kapau and the remaining fourth to Hanakaulani Holt, that Kapau left as his sole heirs at law his grand-children, and that the paper title to an undivided one fourth passed to the plaintiff by the deeds of the grand-children. No exception was noted to this instruction. Plaintiff's counsel, on having his attention called to the defect in the evidence, contends that the point must now be regarded as waived by the defendant by reason of the failure to except to the instruction. Perhaps this is so, although on the other hand it may be urged that the exception to the verdict is broad enough to cover the objection and that justice requires that the court should not sustain the verdict with full knowledge that the evidence of pedigree does not uphold it as rendered. However that may be, upon another ground the verdict must, we think, be set aside and a new trial ordered.

The defense was adverse possession. The following facts were proven by undisputed evidence: P. Nahaolelua, a half brother of Huakini by the same father, Kuauamoa, but by a different mother Kaauhuhu, was appointed administrator of the estate of Kailakanoa November 26, 1862. On December 6, 1870, he filed a petition for the approval of his accounts as such admin-

istrator and for a decree declaring who the heirs of the dece-
dent were.  At the hearing had on this petition, Kapehe the
second was present and testified.  Hanakaulani Holt, too, was
present and represented by counsel.  In those proceedings P.
Nahaolelua claimed that the estate of Kailakanoa  descended
through Huakini, one half to the widow Hoomana and the
other half to himself, the half brother.  Mrs. Holt claimed one
fourth through her grandmother Paele, and it was contended in
her behalf that P. Nahaolelua did not inherit because he was
an illegitimate son, in other words because at the time when he
was born his father Kuauamoa had a first wife living.  Chief
Justice Allen, who heard the case, filed an opinion and decree
on January 21, 1871, wherein he held that in view of the Ha-
waiian customs prevailing at that period P. Nahaolelua should
be regarded as a legitimate half brother of Huakini and decreed
that Hoomana and P. Nahaolelua were the rightful heirs and
each entitled to an undivided one-half of the estate of the dece-
dent.  From that decree Mrs. Holt appealed to a jury, but the
verdict rendered, was on September 18, 1871, set aside by the
Supreme Court on the ground that the appeal had been taken too
late, thus leaving Chief Justice Allen's decree in full force and
unreversed.

On April 16, 1872, P. Nahaolelua executed a lease to Charles
Notley of the whole ahupuaa for a term of five years from that
date.  This lease was recorded July 13, 1872.  The lessee took
possession and made use of the ahupuaa as a cattle ranch and
also cut bark from the trees in the forests for tanning purposes.
September 21, 1874, Hoomana by deed conveyed to P. Naha-
olelua all of her interest in the land, the consideration being
$350.  By his last will dated June 11, 1875, and admitted to
probate before the Circuit Judge of Maui, November 3, 1875,
P. Nahaolelua devised the whole ahupuaa to his son Kia Naha-
olelua.  The latter by instrument dated January 13, 1877, and
recorded January 15, 1877, leased the property, described by
metes and bounds, to Walter Murray Gibson for a term of
twenty years commencing April 17, 1877, the day after the
expiration of the lease first above mentioned, and Gibson in turn

assigned the lease to Charles Notley by writing dated August 29, 1877, and recorded September 5, 1877. On December 2, 1878, Kia Nahaolelua executed a deed of the ahupuaa to H. A. Widemann for a consideration of $1,125, with a covenant of warranty, subject only to a mortgage of $5,000. This deed was recorded December 26, 1878. Widemann conveyed the land to Charles Notley, March 27, 1882, for a consideration of $9,-500. May 4, 1886, Charles Notley and T. H. Davies formed a partnership for the purpose of carrying on a sugar plantation in Hamakua and as a part of that transaction Notley contributed and conveyed to the partnership the ahupuaa; and on April 1, 1886, the land was, with other property, conveyed by Notley and Davies to the defendant corporation. All of these later deeds also were promptly recorded. Notley as lessee and grantee and his successors in interest as grantees, and they alone, from the time when Notley first entered as above stated until the institution of these proceedings, have had continuous and undisturbed possession of all of the land now in controversy, making such use of it as it was capable of, to wit, in the earlier years as above stated, later as a sheep ranch also and ever since 1878 or 1879, as to portions of it, for the purposes of a sugar plantation.

Service of summons in this action was made November 26, 1897. Upon the undisputed evidence, the defendant and its predecessors in interest had, for a period of more than twenty years next preceding the commencement of this action, possession that was actual and continuous. That possession was also, admittedly, open, notorious, exclusive and hostile as against the whole world other than Kapehe the second (hereinafter called Kapehe) and the grand-children of Kapau. It seems to be further conceded that the possession of Widemann and those following him, that is, beginning with December 2, 1878, had all the elements of an adverse holding. The plaintiff's contention is that there was evidence sufficient to support a finding that as against Kapehe and the grand-children of Kapau the possession of the Nahaoleluas was not hostile, nor open, notorious or exclusive, and that these two men so acted towards the parties

43—D

just named as to lead them to believe that the possession was on their behalf and not under claim of absolute ownership. No direct evidence was before the jury of any specific acts or words done or spoken by the Nahaoleluas or either of them which can be construed as a recognition of title in Kapehe or the grand-children. The evidence, and the only evidence, which has been pointed to as tending to support the verdict, either by showing weakness in the defendant's proof of hostility or as independent proof by the plaintiff of a recognition of title in the true owners, is the following: (1) that P. Nahaolelua was governor of Maui, an intelligent and influential man, and a leader among his people, especially among his own relatives; (2) that in 1871 or 1872, after the decree of 1871, Kapehe and the grand-children came, by direction of P. Nahaolelua, from Maui, where they were re-siding, to Honolulu to live with members of the royal family and remained with the latter for some years (Kapehe died May 8, 1877); (3) that for a period of years until 1871, P. Nahaolelua in holding the land acted merely as administrator or as trustee for the true owners; (4) that while in 1872 he purported to lease the whole land, he was in reality not then the owner of Hoomana's one-half and was aware of this fact; (5) that the land was only leased, and not sold, prior to Kapehe's death; (6) that the decree of 1871 was erroneous in law, in that P. Nahaolelua was not of the blood of Kailakanoa and was there-fore excluded by the statute from inheriting; (7) the testimony of Mrs. Kia Nahaolelua that, when she demurred to signing the deed to Widemann, her husband said to her that he had better sell because "mahope komo mai na pilikoko" (bye-and-bye the relatives will come in); and (8) the testimony of Mrs. Holt given in these words: "Kapehe never denied Nahaolelua's interest in this land, nor did Nahaolelua deny Kapehe's interest in this land."

The argument is that as the prominent, intelligent man in the family, P. Nahaolelua would be naturally expected by Ka-pehe to possess and manage the land for the benefit of all the owners and that the lease of 1872 was probably regarded by her as having been an act done partly in her behalf, that he had .

her in his control in the family of the *aliis* with whom he stood in close relations, and that the strong probability is that he so acted towards her as not to lead her to suspect that he was claiming title to the land or seeking to build up an adverse claim to it. The same argument is to a certain extent made with reference to Kia. The answer to it all is that it is too shadowy and conjectural to be permitted to uphold a verdict. When a strong showing of acts denoting a claim of ownership has been made, as in the case at bar, a jury cannot be permitted by resort to pure conjecture, to disregard such showing; and this is said with full appreciation of the rule that the burden of proving the element of hostility is upon the party asserting that the possession was adverse. Kapehe, while she made no claim for herself, was present in court in 1871 at the hearing on the subject of heirship, and testified as a witness for Nahaolelua. In the absence of any satisfactory showing to the contrary, the only reasonable inference is that she knew that Nahaolelua was claiming to be heir to one-half and that he recognized Hoomana only as the other heir. The court so decreed and after a contest in two other courts, the decree stood as the law. It was only in these present proceedings that it was declared by a court to be not binding on Kapehe and erroneous. The lease of 1872 was evidence of a claim of ownership, the effect of which, as against Kapehe or the grand-children, cannot be destroyed by showing that in 1874 Nahaolelua purchased of Hoomana her outstanding interest. He knew at the date of the decree that she owned one half, but there is no reason for believing that at that time he knew that as to the others the decree was erroneous or that any other claim, valid or otherwise, was outstanding. Then there is the will executed in June, 1875, and probated the following November before the Circuit Judge of Maui. In that will P. Nahaolelua devised to his son the whole ahupuaa, an absolute gift subject to no trust whatever in favor of Kapehe or of any one else. Whatever attack, weak or otherwise, might be made upon the lease of 1872, if it stood alone, as being capable of being regarded as an act done in subserviency to Kapehe's title, surely no such claim can with reason be urged con-

cerning the will. The devise was a hostile act, and capable of no other construction. The will was probated on the Island of Maui, Kapehe's home, and presumably after publication of notice in accordance with the rules of court then in force. See Probate Rule III, adopted April 27, 1871. Can it be reasonably inferred under the circumstances that Kapehe was not aware of the disposition thus made of Koholalele? We think not.

Kia Nahaolelua's statement to his wife made just prior to the execution of the deed to Widemann, uncommunicated to any one else, cannot be held to be, of itself, a recognition of the title of the true owners or an admission that his possession was not hostile. An adverse possessor may be consciously a wrongdoer, he may be aware of a defect in his title or that a fraction is outstanding. If he asserts title in himself and by his acts or words or both notoriously shows that he is holding under a claim of ownership, adverse possession is accruing. Moreover, to regard Kia's statement as an admission of title such as to interrupt the running of the statute, is rendered impossible by reason of the fact that in spite of that statement and as a part of the same transaction Kia carried out his purpose and executed the absolute deed to Widemann, thus showing the hostile nature of his possession. But, it is urged, his statement at least shows that he and his father had knowledge of the weakness of their title and thus serves to further make room for the theory that they by their conduct deceived Kapehe and the grandchildren into a belief that their possession was not hostitle. This contention cannot be upheld. The character of Kia's acts is too clearly fixed by the evidence to permit of being shaken by any such theory based upon the present state of the evidence. The same is, we think, true of P. Nahaolelua's possession. To say that because Kia in December 1, 1878, had such knowledge, therefore P. Nahaolelua must have had it also from 1871 to 1875, is at least a strained conclusion; it is even more strained to say that because the two had that knowledge they created in Kapehe and the grand-children the belief that they were holding for her.

Mrs. Holt's testimony, "nor did Nahaolelua deny Kapehe's interest in this land," is insufficient to show recognition by Nahaolelua of Kapehe's title. The words of the witness are incapable of the construction that "Nahaolelua always (or at any time) admitted Kapehe's interest in the land." To say that he did not deny her title proves nothing and does not in any degree weaken the case made out for the defense.

The evidence relied upon by the plaintiff in this matter is, in our opinion, so very slight and so very unsatisfactory that it is insufficient to sustain the verdict. The evidence of adverse possession, on the other hand, is strong and convincing. In so holding we are not unmindful of the rule, repeatedly laid down in former cases, that a verdict cannot be set aside where there is sufficient evidence to sustain it, but a mere *scintilla* of evidence is not sufficient for that purpose. See *Kamalu v. Lovell*, 5 Haw. 62, 64, in which the Court quoted with approval the following language from *Commissioners v. Clark*, 94 U. S. 284: "Decided cases may be found where it is held that if there is a *scintilla* of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to wit, that before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." It may be noted, in conclusion, that the Circuit Judge who presided at the trial, in denying the motion for a new trial appears to have acted reluctantly and with much hesitation. In passing on the motion, he characterized the evidence relied upon by the plaintiff as extremely weak and unsatisfactory and that of the defendant as strong and convincing.

Counsel for plaintiff calls attention to the fact that certain evidence was offered by him tending to show that payments of money were made by P. Nahaolelua to Kapehe and claims that the evidence was erroneously excluded and that if it had been admitted it would have been clearly sufficient to sustain the

verdict. Those questions, however, are not now before us and no opinion is expressed thereon.

The verdict is set aside and a new trial ordered.

*Kinney, Ballou & McClanahan* for plaintiff.

*C. Brown* for defendant.

## Concurring Opinion of Frear, C.J.

I concur in the foregoing opinion. There can be no doubt, as shown by the opinion in *Capitol Traction Co. v. Hof*, 174 U. S. 1, that the appellate court as well as the trial court may grant a new trial, but there is at common law, in the Federal courts and in most of the State courts a great difference between the powers of such courts in this respect. In general the trial court may set aside a verdict of a jury and grant a new trial when the verdict is decidedly against the weight of the evidence, but an apellate court can do this only when there is error of law. But, as held repeatedly, both here and elsewhere, there is error of law if there is no evidence at all or not enough substantial evidence to support the verdict, that is, where there is such insufficiency of evidence in fact to amount to insufficiency in law. "In such cases the evidence is reviewed in the same manner by both trial and appellate courts." 14 Enc. Pl. & Pr. 784. As to the powers and duties of both appellate and trial courts in granting new trials on the ground of insufficiency of evidence, see *Mt. Adams & E. P. I. R. Co., v. Lowery*, 74 Fed. Rep. 463; *Wright v. So. Exp. Co.* 80 Fed. 85. There is, as recognized everywhere, in this, as in many other classes of cases, no fixed standard of easy application to go by. Each case must be judged by itself. But, while the court of course endeavors to uphold verdicts, it has its duty to perform and must exercise it in proper cases. In this jurisdiction the trial court has not gone so far as the Federal and most other courts elsewhere in setting aside verdicts. As a rule their powers in this respect have been regarded as almost as limited as those of the appellate court. But our Supreme Court has usually followed the practice of appellate courts elsewhere, and accordingly our reports are full of decisions declining to set aside verdicts where

there is sufficient substantial evidence to support them, even when the weight of the evidence has seemed to be against the verdict, but this court has always in what it considered proper cases, though naturally such cases have not been numerous, exercised the power to reverse decisions of the trial court and set aside verdicts when there has not been sufficient evidence to support them. See *Bishop v. Kala* 7 Haw. 590; *Hayselden v. Wahineaea*, 9 Haw. 51; *Knudsen v. Palea*, 10 Haw. 573. On the whole, I am inclined to think that this case is one of those in which this power should be exercised. Some courts go so far as to hold that it is the duty of the appellate court to reverse the decision of the trial court and order a new trial irrespective of its own view as to the sufficiency of the evidence, when the trial judge expresses himself as strongly against the verdict as he did in this case. *Tacoma v. Tacoma L. & W. Co.*, 16 Wash. 317; *State v. Billings*, 81 Ia. 100. This is on the ground that it is the duty of the trial judge to set aside the verdict and order a new trial when he so regards the evidence.

## DISSENTING OPINION OF GALBRAITH, J.

I respectfully dissent. To set aside the verdict of the jury on the ground that it is not supported by the evidence is, it seems to me, to fly in the face of the Seventh Amendment to the Constitution of the United States by re-examining a fact or facts tried by a jury in a manner "otherwise than according to the rules of the common law." In order that the majority of this court may reach the conclusion that the evidence does not support the verdict of the jury it was necessary to re-examine the facts submitted to the jury. I do not understand that this can be done. The finding of the jury on the facts is absolutely binding on this court. If there had been no evidence for the plaintiff it would have been the duty of the trial judge to have taken the case from the jury and to have directed a verdict but when the judge determined that there was evidence to go to the jury then the jury became the exclusive judges of its weight and that finding is only subject to review in the manner pro-

vided by the rules of the common law. There was no exception taken to the ruling of the trial judge refusing to direct the verdict. This court can set aside the verdict of a jury for errors of law only.

Mr. Justice Gray in delivering the opinion of the Supreme Court of the United States in *Capital Traction Company v. Hof*, 174 U. S. 1, 13, said: "It must therefore be taken as established, by virtue of the Seventh Amendment of the Constitution, that either party to an action at law (as distinguished from suits in equity or in admiralty) in a court of the United States, when the value in controversy exceeds twenty dollars, has the right to a trial by jury; that when a trial by jury has been had in an action at law, in a court either of the United States or of a State, the facts there tried and decided cannot be re-examined in any court of the United States, otherwise than according to the rules of the common law of England; that by the rules of that law, no other mode of re-examination is allowed than upon a new trial, either granted by the court in which the first trial was had or to which the record was returnable or ordered by an appellate court for errors of law; and therefore that, unless a new trial has been granted in one of those two ways, facts once tried by a jury cannot be tried anew, by a jury or otherwise, in any court of the United States."

It does not seem necessary for me to express an opinion on the other questions raised by the exceptions since the judgment of the majority will remand the cause for a new trial.