## UNITED STATES v. McALISTER.

### No. 8219.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1937.

John B. Tansil, U. S. Atty., R. Lewis Brown, Asst. U. S. Atty., and Francis J. McGan, Atty., Department of Justice, all of Butte, Mont., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to Atty. Gen., and W. Clifton Stone, Atty., Department of Justice, of Washington, D. C., for the United States.

Molumby, Busha & .Greenan, of Great Falls, Mont., for appellee.

Before GARRECHT and HANEY, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

From a judgment after alleged erroneous denial of a motion for a directed verdict and refusal of instruction to that effect on the ground that the evidence was insufficient to sustain a judgment, appellant appeals.

The insured was inducted into the Army June 27, 1918, at age of twenty-four years; was wounded over seas September, 1918, by compound consummated fracture of the radius of the left arm necessitating the removal of several inches of bone; was discharged May 28, 1919, but prior thereto, on May 22d, made claim for disability compensation, estimating his disability at 50 per cent. He was awarded

380

$50 a month, which was increased to $60 and later to $80, he supplementing his income by leasing small ranches and "horse trading." He married in March, 1927, and his wife said from their income they saved several hundred dollars and used this as part payment on a farm. He made claim for total disability on July 2, 1931, or by letter of May 25, 1931, which he may have regarded as such a claim. This action was instituted June 27, 1932. He died on August 26, 1934. On October 29, 1934, Irma McAlister, administratrix of his estate, was substituted as plaintiff. On the 26th day of February, 1936, a verdict in favor of the plaintiff in the amount of installments of war risk insurance accruing after the 28th day of May, 1919, was returned, and on the 29th of February following judgment was entered upon the verdict.

Veterans' Bureau, Medical Division, December, 1922, shows left forearm always weak and painful on trying to work it much at all times, more so at night. Head normal, neck normal, no palpable glands, tonsils not enlarged, teeth good, except two small fillings and loss of right upper lateral incisor. Chest full, deep, broad; pulse 70; temperature 98.2. Abdomen normal. Knee reflexes normal—eyes normal responds light. Wrist motion one-third normal, unable to fully extend second and ring finger, can flex fist, thumb very little strength. Physical and mental condition such that vocational training is feasible. Has not been sick or in any hospital since discharge from Army. Been farming almost constantly since discharge. However, owing to his disability there was lots of work he could not do on farm; never worked for salary. Further examination June, 1924: Present complaint weakness left arm, inability to use this arm except for the very lightest of work. Temperature 36.8, pulse 84, time of day 11: 25. Blood pressure systolic 106, diastolic 56. This man is well developed and well nourished. His color is good and he appears to be in excellent general physical condition. Head, scalp negative, eyes sclerae and conjunctivae clear, pupils round, equal concentric and react readily to light and accommodation; no eye signs of hyperthyroidism. Ears and nose extremely negative; mouth and teeth in good condition, well cared for; tongue and buccal mucose negative; tonsils atrophied; no abnormal tumors on neck or pulsations present; chest and lung expansions good and equal percussion clear; normal breath and voice

sound all lobes, no rales heard; heart borders normal point of maximum intensity in fifth intercostal space well inside the left nipple line, sounds clear and regular with no murmurs or arrhythmia; abdomen full and rounded, no palpable tumors, organs or points of tenderness; about one inch of the middle third and two inches of the lower third of the left radius has been shot away by a high explosive shell; the left hand is turned medianward and the muscles of the forearm are quite atrophied; there has been considerable loss of soft tissue at the site of injury. The scar is well healed and is not painful; knee jerks equal, active and normal, no Romberg present.

The plaintiff testified she saw the deceased in 1919 when he was home on a furlough. That he was nervous and carried his arm in a sling. "I do not know of anything else wrong with his physical condition at that time. I never noticed anything else." The arm was still an open wound; had to be dressed by a physician all the time. Next saw him in the fall of 1926 and "started going with McAlister." His physical condition was practically the same as in 1919. He tried to work but was never successful at it. Did not notice any other conditions "with reference to his physical condition other than the arm condition." Married March 31, 1927. Saw he was very nervous, back and side hurt, his heart bothered him, his feet bothered him, he had a sort of rheumatic condition, in a little time he got so he couldn't walk for a few days. "His digestion was poor. Every time he would eat he was blowed up and it would crowd his heart." Had no use of his left arm. Did not rest well at night. "If he was around horses in the daytime he drove horses all night." Could not ride horseback. In '27 moved into a small cabin and he was trying to supervise road work, but was not able to work. His duties were mostly driving a team and seeing that the other men did it. He didn't actually drive the team, but saw that the other men did it. He continued this work for one summer. For the most part moved quite a number of times and lived on small ranches and about all he did was try to trade a little, "I mean he traded horses and cattle." He lost more than he made. There were times we lived on leased ranches, put in crops, but he hired the work done. "I had some money when we married. That money was used by me in conjunction with the upkeep of whatever business Mr. McAlister had and the home."

"In the fall of '32 we tried to buy a place— could not keep up payments, lived there from fall of '32 until his death, paid $300 on the place. We saved out of what he received from the Government. He had $150 in the bank when he died. In the summer of '28 we moved to a small place in the town of Belgrade, then went to the old Winter's place north of Melard. McAlister farmed at that place. In the fall of '29 we moved four miles from Manhattan on a farm, and that's where he had raised some hay. He usually took Harlem Oil tablets for his kidneys. We had these in the house continuously from 1927 until his death; take them a couple of times a week. He used to bloat after he ate; take soda and different kinds of pills that caused him to belch and get rid of it. He went to Dr. Sigler in the fall of 1929. I never went with him. Dr. Sigler came to our place. McAlister had a fifth or sixth grade education. He went out to dinner with me on various occasions. When he went out to dinner there was nothing in his physical condition that I noticed except a nervous condition. He would not be out long before he would request to go home. He coughed and had to take cough medicine. He took medicine from 1927 to his death. He was right handed. He took the pills on advice of a friend, not a doctor. He was not under the care of any physician during 1926 and 1927, but did go to the doctor's at different times—probably twice a year. He was never under the care of any doctor for any length of time during our married life until his last illness. When we married he received from the Government around $60 a month. This was increased to $86 a month. From our savings we paid $300 on the farm and had a savings of $150 in the bank at the time of his death. Since his death the Government has paid me as his widow $30 a month."

Doctor testified for the plaintiff that he examined deceased in January, 1920, and again three years later. His complaint at the time was a weak left forearm and hand; could not extend two middle fingers or thumb. Left forearm measured two inches shorter than the right forearm and hand. Between two and four inches of the left radius was gone. That his left hand is not in line with the forearm; left hand and forearm were quite weak compared with right hand and forearm. Condition otherwise normal. The examination was for the purpose of determining wheth-

er he had a vocational handicap. That the examination disclosed that he had a disabled hand and forearm; that he was not able to carry on his former occupation— that of a farmer. Date of the next examination was three years later. "Left hand was not in proper alignment with the forearm. The wrist of the left hand is weak; sensation is practically normal. Flexation of the wrist limited. He had a measured vocational handicap. I base my conclusion that there was a vocational handicap upon his inability to use his hand in a normal way. I did not make any neuro psychiatric examination. They were made by specialists."

Dr. Seitz, surgeon in the United States Public Health Service, in effect said: "All I found wrong with McAlister was the result of a serious gunshot wound to his left arm. I found nothing else. My prognosis was unfavorable. By that I meant his arm would get no better or no more useful from that time on and that was my opinion at that time. I think he had developed a definite myocarditis, probably the last two years of his life or a little longer. The ordinary cause of this is overwork of the heart muscles, overstrain thought to be secondary perhaps to a respiration condition, overweight. Primary cause of his death was bronchial pneumonia."

 To recover the appellee must show by a fair preponderance of the evidence that insured was totally and permanently disabled on or before May 28, 1919. It is not sufficient to show partial total disability. U. S. v. Golden, 34 F.(2d) 367 (C.C. A.); U. S. v. Thomas (C.C.A.) 53 F.(2d) 192; U. S. v. McLaughlin (C.C.A.) 53 F. (2d) 450. To sustain a verdict there must be substantial testimony. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. There is no evidence of the deceased's impairment beyond the injury to his left arm from the date of his discharge until after his marriage in 1927. The condition of his kidneys, the bloating, his heart, and similarly the condition of his feet and all complaints, except the injury to the left arm, are absent from this record for the period covered. There is no evidence as to the appellee's employment after his discharge and his marriage other than the statement of trading, and some lay witnesses that never saw him at work. Nonemployment of itself is not evidence of impairment or a basis of recovery upon the policy in issue. U. S. v. Hill, 61 F.(2d) 651, 653 (C.C.A.). There is in evidence

382

the statement of the deceased of a 50 per cent. impairment covering the period above suggested, but that is not sufficient. The testimony of the appellee's fifth or sixth grade education is not sufficient, nor is this in relation to or combination with the injury sufficient. No evidence is presented of mental deficiency. Proechel v. U. S., 59 F.(2d) 648 (C.C.A.). The testimony shows that he was physically well developed, normal in practically every other relation, with normal temperature and heart pulsations, deep chested, muscles well developed, except as to the left arm. He did make a living and with Government pension for loss of his arm saved money. See Miller v. U. S., 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977, rehearing denied 294 U.S. 734, 55 S.Ct. 635, 79 L.Ed. 1262. His physical condition after marriage cannot have any relation to his arm injury of nine years previous. The absence of evidence between the date of discharge and his condition beginning in 1927 discloses no substantial or any evidence of impairment other than the injury to his left arm and hand. This is not a case of weighing evidence, but the challenge is want of substantial evidence, and when that is made to appear the duty of the court is plain and must be asserted as a matter of law.

The judgment is reversed, and the cause remanded, with instructions to dismiss.