[Civ. No. 3540. Fourth Dist. Mar. 24, 1947.]

GEORGIA GREENLEAF, Appellant, v. WILLIAM BRIGGS et al., Respondents.

H. H. Bell and Walter H. Hewicker for Appellant.

Harvey, Johnston, Baker & Palmer for Respondents.

GRIFFIN, J.—Defendant and respondent Bakersfield and Kern Electric Railway Company is a public utility operating buses on the public streets of Bakersfield. Defendant and respondent William Briggs was the operator of the bus here involved. A bus stop sign, near plaintiff's home, was located at a point between 227 and 229 South Chester Avenue, near the curb. The sidewalk at that point extended to the curb, which provided a flat level place to discharge passengers. Within a few feet from this sign a concrete driveway sloped to the street from the sidewalk at an angle of about 30 degrees.

On March 27, 1945, at about 11 o'clock p. m. the bus on which plaintiff was riding, according to her story, stopped just north of the sign in front of the driveway herein described. The night was dark and the driveway was wet. In alighting from the bus plaintiff, who was 79 years of age, stepped on the slope of the driveway with her right foot. She fell heavily on her left side, sustaining a fractured hip.

Defendants, in their answer to plaintiff's complaint, denied all allegations of negligence and pleaded contributory negligence on the part of the plaintiff.

The evidence shows that plaintiff was completely off of the bus when she fell. The driver testified that the bus stopped at its usual stopping place, 225 South Chester Avenue, with the stop-sign post lined up with the front of the bus (which post had been in the same place for about two years and was located near the plaintiff's home) ; that the bus had both a center and front door exit; that plaintiff was standing at the front door of the bus waiting for it to stop; that it did not move until after plaintiff fell; that the bus was of a new type and was

lighted with 12 dome lights and a step light in each step, throwing a light seven or eight feet across the sidewalk; that he pulled the bus "right against the curb"; that plaintiff got out of the bus and started to step up the walk and lost her balance and fell down; and that the driveway was not wet although there was a puddle of water in the gutter. The jury returned a verdict in favor of defendants.

The claimed negligence of defendants is predicated upon the theory that, since defendants were at all times required to exercise the utmost care and diligence, their failure to stop at a more accessible place and to furnish their passengers with a safe place to alight from the bus, entitled plaintiff to a recovery as a matter of law, citing section 2100 of the Civil Code; and *Kline* v. *Santa Barbara etc. Ry. Co.*, 150 Cal. 741 [90 P. 125].

The evidence establishes as a fact that the sidewalk and curbing on which passengers were permitted to step when alighting from the bus was not a platform or walk furnished or maintained by the defendants. There is substantial evidence, if believed by the jury, that plaintiff failed to exercise due caution for her own safety.

The question of defendants' negligence and the contributory negligence of plaintiff were factual questions for the jury to determine. (*Hall* v. *Kaufman*, 37 Cal.App.2d 264 [99 P.2d 339].)

Plaintiff claims certain errors were committed by the trial court in its rulings on the question of the admissibility of certain evidence in reference to the usual stopping place of the bus, concerning governmental regulations in relation thereto, and instructions in connection with defendants' responsibility for maintenance and upkeep of sidewalks and driveways in places where passengers were permitted to alight. We have carefully considered these claimed errors. Our examination of the transcript in reference thereto reveals no prejudicial error in these respects.

At defendants' request the court instructed the jury (Instruction No. 14) on the doctrine of unavoidable accidents, and followed it with the instruction that if the jury believed that Briggs "was, at the time of, and when he arrived at, and near the scene of the accident, operating the bus in an ordinary, careful and prudent manner, . . . including the customary and ordinary method of operating and stopping along such route," and plaintiff was injured and the accident was

inevitable or unavoidable, plaintiff could not recover. The instruction, standing alone, is inapplicable to a passenger riding on a bus of a common carrier and is contrary to the rule of conduct prescribed for common carriers under section 2100 of the Civil Code, in that said section requires such carrier to use "the utmost care and diligence" for the safe carriage of a passenger. (See, also, *Nance* v. *Fresno City Lines, Inc.,* 44 Cal.App.2d 868, 870 [113 P.2d 244].) ██ It also permits the consideration by the jury of the "customary and ordinary method of operating and stopping along such route" in determining whether the accident was unavoidable. These added words admit of the interpretation that if defendants were *customarily* violating the provisions of section 2100 of the Civil Code no liability attached to them. To this extent the instruction is erroneous. However, in another portion of the instruction it did recite that under such circumstances the driver must be using *"ordinary care* in the management and operation of his vehicle." The court did instruct the jury, at plaintiff's request, that "The carrier of passengers for hire is required to exercise the *highest degree of care* in their transportation, and is responsible for injuries received by them as passengers which might have been avoided by the exercise of such care."

At defendants' request it instructed the jury that the relationship of passenger and carrier continues during the ride and "while the passenger is in the act of alighting, and until she has reasonable opportunity, after leaving the bus, to get beyond danger from its operation." After that "she is no longer a passenger. . . ." Then the court instructed the jury, at defendants' request, that while she was a passenger defendants were obligated to observe the *utmost degree of care and skill* and to provide her with reasonably safe means of alighting from the bus.

██ At plaintiff's request the court instructed the jury that "When a carrier knows, or in the exercise of its duty would know, that a passenger is aged and infirm, or otherwise handicapped, it is the carrier's duty to give special attention to the needs of such a passenger as they involve her safety and as that safety might be affected by the management of the bus; and the providing of a safe place to alight therefrom, and having the passenger's safety as an object render such care and assistance as are commensurate with the reasonable needs of her condition."

The trial court then instructed the jury, at plaintiff's request, that "The responsibility imposed by law upon a carrier of passengers for hire includes the duty to provide a *reasonably safe place* where the passenger may board and alight from the bus."

It thus appears that plaintiff has also fixed a standard of care required of a carrier for the passengers of a bus for hire as the duty to provide a *reasonably safe* place where the passenger may *board and alight* from the bus.

The trial court gave plaintiff's instructions covering the theories under which she might recover. She invited instructions on *ordinary* and *reasonable care,* and a *reasonably safe* place to alight from the bus. She has used the words *ordinary* and *reasonable care* as a *standard of care* in at least three other instructions requested by her (Plaintiff's instructions 3, 4 and 5).

Plaintiff's complaint recites that her cause of action is based upon the theory "That it was the duty of the defendants to stop at a suitable place at said 225 South Chester Avenue for the use of passengers alighting from said bus" and that defendants, "in carrying said plaintiff as passenger negligently failed to stop said bus at the usual stopping place at 225 Chester Avenue indicated by a sign at said place" and stopped immediately in front of and on a sloping concrete driveway; and that said driveway was unsafe as an alighting place for passengers of said bus.

Counsel for plaintiff, in his argument, stated to the jury: "The fact remains that the only question in this case, the only question you have to consider is, did the bus company furnish its passenger, Mrs. Greenleaf, with a safe place to alight from the bus?" If plaintiff does not maintain that she was injured during her carriage, but only after she alighted, and claims negligence with respect to the conditions where she alighted and that the defendant driver stopped at such a point, the standard of ordinary care might come into play with respect to the condition of the place where she did alight. The standard of *ordinary care* is upheld in *Robson* v. *Union Pacific R. R. Co.,* 70 Cal.App.2d 759 [161 P.2d 821] ; *Teale* v. *Southern Pacific Co.,* 20 Cal.App. 570, 576 [129 P. 949] ; *Falls* v. *San Francisco & N. P. R. R. Co.,* 97 Cal. 114, 119 [31 P. 901] ; *Sellars* v. *Southern Pacific Co.,* 33 Cal.App. 701, 707 [166 P. 599] ; *Sanchez* v. *Pacific Auto Stages,* 116 Cal.App. 392, 396 [2 P.2d 845] ; and 13 C.J.S. [Carriers] pp. 1326-1328, § 713.

Since appellant has, through her request, invited the trial court to instruct the jury that the rule of ordinary care applies as to the duty of defendants to provide a reasonably safe place of alighting from or boarding a bus, and has used that same standard of care in at least three other instructions requested by her, she cannot be heard to complain because defendant offered and the trial court gave, instructions substantially the same in meaning. In other words, plaintiff cannot attack a verdict resulting from an erroneous instruction which she prompted. The doctrine of an invited error is applicable irre-spective of the good faith of the plaintiff. (*Jentick* v. *Pacific Gas & Electric Co.*, 18 Cal.2d 117 [114 P.2d 343] ; *Eubanks* v. *Milton G. Cooper & Son, Inc.*, 68 Cal.App.2d 366, 373 [156 P.2d 775].)

The other instructions of both plaintiff and defendants, given by the court, clearly instruct the jury that the carrier was required to exercise the highest degree of care while plaintiff was riding as a passenger. The jury were fully instructed as to the time when that highest degree of care terminated. We are not convinced that the instructions given, when considered as a whole, were prejudicially erroneous or that any error complained of entitled plaintiff to claim that a miscarriage of justice resulted only by the giving of defendants' claimed erroneous instructions.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1947. Carter, J., voted for a hearing.