TRADEWIND TRANSPORTATION COMPANY, Limited (Formerly known as Alien Tours of Hawaii, Ltd.), Appellant,

v.

Bernice (Terry) TAYLOR, Appellee.

No. 16033.

United States Court of Appeals Ninth Circuit.

April 21, 1959.

Rehearing Denied June 9, 1959.

**186**

Smith, Wild, Beebe & Cades, William L. Fleming, Honolulu, Hawaii, for appellant.

David N. Ingman, Kenneth E. Young, Honolulu, Hawaii, for appellee.

Before POPE, CHAMBERS and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal by Tradewind Transportation Company, Limited (formerly known as Allen Tours of Hawaii, Ltd.), hereinafter Appellant, from a judgment in favor of Bernice Taylor, hereinafter Appellee. The case was tried before a jury in the United States District Court for the District of Hawaii. A verdict was rendered in favor of appellee in the sum of $14,545.00. The District Court had jurisdiction by reason of the diversity of citizenship of the parties, and the jurisdiction of this court is admitted.

The action was brought in the District Court by appellee against the Soto Mission of Hawaii, Ltd., hereinafter referred to as the Mission, and against appellant, to recover damages for personal injuries sustained on June 13, 1956, as a result of a fall on the front steps of the Soto Mission Temple in Honolulu. The Mission was a non-profit corporation. The appellant was engaged, among other activities, in the business of transporting tourists to various points of interest upon the island of Oahu in Hawaii.

It appears that upon June 11, 1956, appellee purchased a ticket for $6.50 from appellant which entitled her to transportation with others in an automobile in what is known as the Circle Island Tour. This consists of a trip around the island of Oahu, stopping at various points of interest on the way.

Appellee, accompanied by three others, entered appellant's automobile about 8:30 a. m. and commenced the tour. The automobile was driven by one Pagay, an employee of appellant. The tourists were first driven in appellant's automobile to the vicinity of the pier where the steamship Lurline was to dock. They alighted from the automobile and after walking around for some half-hour watching the proceedings on and near the dock, they returned to appellant's automobile to continue the tour. Appellant's automobile then proceeded with appellee and other tourists therein to the Mission Temple on Nuuanu Avenue in Honolulu. The Mission Temple is also referred to in the record as the Buddhist Temple. Pagay drove the automobile up to the front steps of the Temple and allowed appellee and the other tourists to alight for the purpose of viewing the interior of the Temple. The steps and walks of the Temple were wet from rain which had recently fallen, and the appellee observed the condition of the Temple steps and knew that they were wet. Pagay, the driver of the car, did not enter the Temple with the tourists, nor did he go up the steps of the Temple with them. Appellee and the other tourists entered the Temple and viewed the interior thereof. When they returned to the door of the Temple, Pagay, the driver, met them there and presented each of them with an hibiscus which he had gathered while the tourists were inside the Temple. Appellee then started to walk down the steps of the Temple. After passing a landing she started down the main portion of the steps and slipped and fell on the

second or third stair. There is no evidence that there was any foreign substance upon the steps when appellee fell. The steps, however, were wet from rain.

As a result of the fall, appellee suffered certain bodily injuries, was confined to a hospital for some time before her return to the United States, and incurred hospital and medical expenses by reason of her injuries.

The action against both the Mission and the appellant was based on the alleged negligence of these defendants.

The Court instructed the jury that as to appellee's claim against the Mission (the owner of the premises), that it should consider whether appellee was a licensee or an invitee, and then explained the duties of the Mission toward appellee in either case.[1]

The Court further instructed the jury as to appellee's claim against the appellant as follows:

"If you find by a preponderance of the evidence that a condition involving an unreasonable risk of harm existed at 1708 Nuuanu Avenue on June 13, 1956, that defendant tour company's employee learned of said condition in the course of his employment prior to that date but failed to warn the plaintiff and that said condition was the proximate cause of plaintiff's injury, then you should find for the plaintiff and against the defendant tour company, irrespective of what you may find as to the liability of defendant, the other defendant.

"The defendant's, Allen Tours of Hawaii, Limited, only duty to the plaintiff with regard to the steps of the Soto Mission on June 13, 1956, was to warn the plaintiff of the existence of the dangerous condition known to defendant Allen Tours of Hawaii, Limited, or its authorized

---

1. "A licensee is a person who goes upon the land or premises of another by the express or implied permission of that other. One who goes upon the premises of another as a business visitor, at the express or implied invitation of the owner and in connection with some mutual business interest with the owner or with the latter's own business, is called in law an invitee.

"Whether a person entering the premises of another bears the legal status of an invitee or of a mere licensee depends upon the purpose of the visit. So long as its object is the pleasure of only the visitor or of some third party, or of a purely social nature, then he is, at most, only a licensee. When, however, the visitor has a purpose that is related to the occupant's business or that involves some matter of mutual business interest or advantage, then an invitation to use the premises may be inferred, and whether so inferred or expressed, the invitation and the purpose make the guest an invitee.

"The reason that you have to make that determination is that different rules apply. So, first, if you should find from the evidence that the plaintiff was a licensee, this rule of law applies.

"On the liability of the owner of the premises—a possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artifi-

cial condition thereon if, but only if, he (a) knows of the condition and realizes that condition involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain on the land, without exercising reasonable care to make the condition reasonably safe, or to warn them of the condition and the risk involved therein. That is for the licensee."

\* \* \* \* \* \* \*

"If you find from the evidence that the plaintiff was an invitee, or, in other words, a business visitor, this rule applies: a possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe, or to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive."

employee and unknown to the plaintiff. If you find that the steps of the Soto Mission did not constitute a condition presenting an unreasonable risk of harm to the plaintiff, then your verdict must be for both defendants.

"Before you may find against the defendant Allen Tours of Hawaii, Limited, you must find that said condition existed, that said defendant or its authorized employee had actual knowledge of the condition and that the condition was not apparent to a reasonably prudent person observing the same. If defendant Allen Tours of Hawaii, Limited, had no knowledge of this condition, or if the condition was apparent to a reasonably prudent person, then you cannot render a verdict in favor of the plaintiff against the defendant Allen Tours of Hawaii, Limited."

The jury was further instructed that appellee's contributory negligence would bar her claim or recovery against either the Mission or the appellant.

The jury found a verdict in favor of the Mission as the owner of the premises, and against Tradewind.

 It should be emphasized that Tradewind's $6.50 tour service did not include a guided tour through the points of interest themselves. Appellant's drivers drove their passengers to the interest points, briefly explaining, en route, why they were of special interest. The passengers then alighted and were allowed to inspect the premises, unaccompanied by the drivers. This being the case, it is clear that the duty Tradewind owed the passengers in regard to the Soto Mission (owned and controlled by third parties) was simply that of ordinary care: to warn them of any unreasonable risk of harm in or about the

said Mission; i. e., a dangerous condition known to Tradewind and unknown to the passenger. Cf. Pickwick Stage Lines v. Edwards, 10 Cir., 1933, 64 F.2d 758; Greenleaf v. Briggs, 1947, 78 Cal.App.2d 720, 178 P.2d 459; Parker v. City and County of San Francisco, 1958, 158 Cal. App.2d 597, 323 P.2d 108.

To sustain this judgment there must be substantial evidence of some breach of this duty—some negligent act or omission by Pagay—that was the actual and proximate cause of appellee's injuries.

Was the negligent omission the driver's failure to warn appellee of the unreasonable risk of harm created by the wet steps?

The only evidence as to the knowledge of the appellant of the condition of the steps where the accident happened is found in the testimony of Larry Pagay, the driver of the appellant's automobile. He was called as a witness for the appellee. To indicate that Pagay was not an unfriendly witness to appellee, it might be stated that it was shown by his testimony that while he had not known appellee prior to the day of the accident, that he had after the accident visited appellee several times at the hospital, that he took her for rides around town, and had driven her to the airport when she returned to the States some weeks after the accident. It was further shown that he had corresponded with her in the States, that after she had returned to Honolulu a week before the trial he had breakfast with her where they had discussed the case, that he had seen her many more times beside that, and that he had devoted all of his free time during that week to showing her around in Honolulu.

After testifying on direct examination to having seen slipping on the steps,[2]

---

2. "Q. Before June 13, had you visited the premises when they were wet? A. Yes, sir.
"Q. What did you observe on these prior occasions that you had visited the premises when the steps were wet? A. Well, I was fairly new then. I didn't

know very much about tours, about telling people to be very careful, until after the accident what Mrs. Taylor had. And ever since then I was very careful about telling people to watch their step when they get off the car or going into buildings."

Pagay testified on cross examination as follows:

"Q. Now, then, you testified, I believe, as to seeing a driver slip, is that right? A. Correct.

"Q. Do you know his name? A. No, I don't, sir.

"Q. Do you know when it was? A. Well, I can't say what time it was, sir, and what date.

"Q. Now, isn't it a fact that he is the only man you ever saw slip on these steps? A. That is the only man, yes.

"Q. Did you see a woman? A. I seen a woman, not on the steps but on the grass.

"Q. On the grass? A. Yes.

"Q. But not on the steps? A. Not on the steps.

"Q. So the only man that you state that you saw was this man—you don't know his name? A. I don't know his name.

"Q. You never did know? A. Never did.

"Q. And you didn't inspect his shoes or anything such as that? A. No, not at all, because it didn't really matter to me at all because he wasn't any friend of mine or anything and besides I didn't know anything about a certain fall or anything like that only until after she fell.

"Q. And there was no bad injury in that fall? A. No.

* * * * * *

"Q. And you did notice the condition of the steps on the day that Mrs. Taylor fell, did you not? A. Yes.

"Q. They were wet, is that correct? A. Yes.

"Q. And, as a matter of fact, isn't it true that they were less slippery than your ordinary concrete steps? A. Yes, I would say less slippery than concrete steps.

"Q. And you had no reason prior to June 13, 1956, to warn Mrs. Taylor concerning the condition of those steps? A. Well, I really don't—

"Q. You understand the question? A. Yes, I understand your question. I was fairly new driving then. I didn't know very much about tile being so slippery or anything like that.

* * * * * *

"Q. Mr. Pagay, you testified on cross-examination yesterday that you had seen a driver slip on the steps of Soto Mission. A. Correct.

"Q. And you had just seen him slip, there was no injury, and he just walked away? A. That is right".[3]

"Q. But going back to the time before her accident, what did you see happen on these days you visited the mission when the steps were wet? A. I think a few times I myself seen some of the drivers—I can't tell who they are because we have hundreds of them go through the temple—they go outside, independent cabs because we have lots of boats coming in the past couple of years.

"Q. You saw some of the drivers what? A. Slip, not accidentally fall on their back, but just slip and to break their fall they would use their hands.

* * * * * *

"Q. Now, who was the first person that you saw fall, that you saw slip? A. Well, I couldn't tell who they are because they don't go close to the stairways. We stay very far from there, near our car, while the people are inside the temple. But when they do come out, we can't tell who they are. So actually I really don't know, sir."

3. It was also shown that Pagay on March 18, 1957, made a written sworn statement regarding the accident, which contained the following questions and answers:

"Q. Have you ever had knowledge of any other member of your tour party or any other tour party falling on these steps?

"A. Not that I know of.

"Q. Are these steps just like any other wet steps or more slippery or less slippery?

"A. I would say less slippery because they have sort of cuts with cement where the tiles are put together."

Under the Court's instruction, supra (which was offered by plaintiff), in order for there to be a recovery against appellant, there must have been proof by a preponderance of the evidence that Tradewind knew that the condition of the steps of the Mission constituted "a dangerous condition" and involved "an unreasonable risk of harm" to plaintiff, and that this condition was unknown to plaintiff. Then, and only then, did appellant have a duty to warn appellee.

The evidence is wholly insufficient to bring such knowledge to appellant. Appellee knew the steps were wet, as did Pagay. The mere fact that on some previous occasion, and from a considerable distance away, Pagay saw a driver slip on the stairs and walk away without injury does not bring knowledge of a dangerous condition to appellant.

To sustain a jury verdict in the federal courts there must be substantial evidence, a mere scintilla is not enough. Gunning v. Cooley, 1929, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; United States v. McAlister, 9 Cir., 1937, 88 F.2d 379; United States v. Krumsiek, 1 Cir., 1940, 111 F.2d 74; Texas Co. v. Savoie, 5 Cir., 1957, 242 F.2d 667, certiorari denied 355 U.S. 840, 78 S.Ct. 49, 2 L.Ed.2d 51.

Pagay did not testify as to any knowledge of the cause of this slip, whether from a foreign substance on the steps, from inattention of the driver, or from any of a number of other causes.

We hold that there was no sufficient evidence to establish that at the time of the accident, appellant had knowledge of an unreasonable risk of harm to plaintiff or had knowledge of the existence of a dangerous condition which brought into being any duty by appellant to warn appellee.

The judgment is reversed.

### Petition for Rehearing.

In a petition for rehearing in this case, appellee cites the rule in Hawaii to be as follows: "In this jurisdiction it is settled that a mere scintilla of evidence is insufficient to support a verdict. Smith v. Hamakua Mill Co., 14 Haw. 669; Wo Sing Co. v. Kwong Chong Wai Co., 16 Haw. 17. But it has often been held that this court would not set aside a verdict where there was some evidence, i.e., more than a scintilla of evidence, to support it." Robinson v. Honolulu R. T. & L. Co., 1911, 20 Haw. 426. See Territory v. Lam Bo, 1917, 23 Haw. 718; Holstein v. Benedict, 1915, 22 Haw. 441.

Conceding such a statement to be the Hawaiian rule, we hold that in the instant case there was no evidence, not even a scintilla, to establish any knowledge in appellant of a dangerous condition requiring it to warn appellee.

On the question of whether local or federal law is here applicable, see "Effect of Erie Railroad Co. v. Tompkins on Sufficiency of Evidence to Present Question for Jury," 5 Moore's Federal Practice, 2nd Ed., § 38.10, pp. 102 et seq.

The petition for rehearing is denied.