**PORT OF PASCO, a municipal corporation, Appellant,**

v.

**PACIFIC INLAND NAVIGATION COMPANY, Inc., Appellee.**

**No. 18644.**

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1963.

**594**

Cashatt, Williams, Connelly & Rekofke, and Jerome Williams, Spokane, Wash., for appellant.

Summers, Howard & LeGros, Charles B. Howard, and Thomas F. Paul, Seattle, Wash., for appellee.

Before POPE, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Pacific Inland Navigation Company, Inc. (Pacific Inland), proceeding under 46 U.S.C. §§ 183[1] and 185,[2] petitioned the district court for exoneration from or limitation of liability for damage to a dock owned by the Port of Pasco, Washington, caused by an explosion and fire on petitioner's barge while a cargo of gasoline was being unloaded. Following trial, a final decree in admiralty was entered denying the petition for exoneration but limiting liability to the amount of $3,458.31. The Port of Pasco (Port), as claimant, appeals.

As a necessary prerequisite, under section 183(a),[3] to a decree limiting liability, the district court found and concluded that the explosion and fire were occasioned "without the privity or knowledge" of Pacific Inland, its corporate officers, managing agents or supervisory personnel. The single question presented on appeal is whether this ruling is erroneous.

Pacific Inland's "Barge 535, Port of Longview" (Barge 535), was moored alongside the Port's dock at Pasco, Washington, on December 16, 1958, carrying a cargo of 328,056 gallons of gasoline. The cargo was to be unloaded into Pacific Inland's adjacent tank farm. Preparatory thereto, Gale Oldfield and Wilbur Bunce, subordinate employees of Pacific Inland at Pasco, boarded the barge about 9:00 P.M. to adjust the throttle linkage on a diesel motor which powered the pump on the barge.

While Oldfield and Bunce were on the barge they found that the circuit breaker switch controlling the starboard deck lights tripped off after the starboard lights had been turned on momentarily. Oldfield, believing that the trouble was in the circuit breaker switch, replaced this unit, following which the lights appeared to function normally. In fact, however, the circuit breaker had tripped because of a short circuit of an intermittent nature in the starboard deck light circuit.

Thereafter, the unloading of the cargo of gasoline was commenced and pro-

---

1. Rev.Stat. § 4283 (as amended 49 Stat. 1479 (1936)).

2. Rev.Stat. § 4285 (as amended 49 Stat. 1480 (1936)).

3. 46 U.S.C. § 183(a) reads:
   "**§ 183. Amount of liability; loss of life or bodily injury; privity imputed to owner; 'seagoing vessel'**
   "(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

ceeded for about four hours with the starboard deck lights on. Shortly after midnight a violent explosion occurred. The explosion was set off by an electric arc which ignited gasoline vapors incident to the unloading operation. This electric arc was produced by the same short in the starboard deck light circuit which had previously manifested itself by the tripping of the circuit breaker. As a result of this explosion and fire, the Port's adjacent dock was damaged in the amount of $55,464.

The Port commenced an action against Pacific Inland in the Superior Court of the State of Washington, County of Franklin, to recover damages in this amount. Pacific Inland then filed, in the federal district court, its petition for exoneration from or limitation of liability. The district court entered an order restraining further prosecution of the state court action. Thereafter, based upon a stipulation of the parties, the district court modified the restraining order to permit the state court action to proceed to trial "on the issues of the lia-

bility of the defendant, if any, and as to the amount of plaintiff's damages. * * * * "

In this order of modification, however, there was reserved to the district court, jurisdiction "to determine and adjudicate the claim of petitioner * * * as to its right to limitation of liability under the provisions of Title 46, U.S.Code § 183, et seq., as amended." [4] It was further provided in this order that upon final disposition of the issues as to liability and damages in the state action, "the issue as to petitioner's claim of limitation of liability shall be adjudicated by this court and the parties shall return to this court for that purpose."

The state action then proceeded to trial before the court sitting without a jury. This resulted in the entry of findings of fact, conclusions of law and judgment awarding the Port damages in the amount of $55,464 against Pacific Inland. Findings of fact III to VI, entered in the state action, are quoted in the margin.[5] Pacific Inland did not ap-

---

4. Paragraph 6 of this stipulation reads:
"6. That the Port of Pasco, a municipal corporation, does consent to waive any claim of *res judicata* as to the issue of Limitation of Liability which might be based upon any finding, decision or judgment of the state court in Cause No. 10527."

5. III.
"On the 16th day of December, 1958 the aforesaid Barge 535, Port of Longview, which was carrying a cargo of gasoline, was moored at one of plaintiff's docks at Pasco, Washington, and while the said cargo of gasoline was being discharged from the said barge into tanks situated on the adjacent shore, an explosion occurred at the forward end of the barge, followed by a fire which communicated to plaintiff's dock facilities, causing damage to plaintiff's said dock facilities in the amount of $55,464.00.

"IV.
"The said explosion occurred from the ignition of gasoline vapors incident to the unloading operation, which said vapors were ignited by an electric arc produced by a short in the starboard deck light circuit of the said barge. The aforesaid short was a defective condition in the said

starboard deck light circuit which had previously manifested itself to defendant's employees Oldfield and Bunce approximately four hours before the explosion by causing the circuit breaker switch which served the said starboard deck lights to kick off or trip, as the said circuit breaker switch was designed to do in the event of a malfunction in the circuit.

"V.
"The said circuit breaker switch is not a simple tool and the aforesaid employees of defendant, Oldfield and Bunce, did not possess sufficient skill or understanding of things electrical so as to realize that the circuit breaker switch, by so tripping, was giving notice or warning of a defective or shorted condition in the said starboard deck light circuit, and said employees proceeded to replace the said circuit breaker switch with a new one, which was followed by the apparently normal operation of the starboard deck lights. The said employees thereupon erroneously concluded that a malfunction in the circuit breaker switch itself had caused the circuit breaker to trip as aforesaid, but the Court finds as a fact that the circuit breaker switch was not in any way defective but tripped as the

peal to the state supreme court and the parties thereupon returned to the district court.

At this point in the proceedings the Port filed an amended answer. It was therein alleged, among other things, that Pacific Inland, acting through its management personnel, was negligent in failing to issue instructions to its employees or to otherwise educate them as to the warning function of the circuit breaker switches and as to safe and proper practices when such circuit breakers trip, particularly when gasoline is being or is about to be unloaded. It was further alleged that the explosion would not have occurred if the said employees had been so instructed or educated, and that the explosion was proximately caused by the negligence of Pacific Inland in this respect.

By reason thereof, it was alleged, the explosion and fire were occasioned with the privity and knowledge of Pacific Inland, acting through its officers and managing agents. The Port, relying upon section 183(a), quoted in note 1, accordingly asked that the company be not exonerated from, or be permitted to limit its liability for, the damages which had been assessed and awarded by the state court.

Pretrial proceedings in the district court were then had, leading to the entry of a pretrial order supplanting the pleadings. Under the terms of that order there was left as the single issue, insofar as here relevant, the question of whether there was such a failure of the managing personnel to instruct or otherwise educate its employees in the respects described as to constitute negligence on the part of such personnel proximately causing the explosion and fire. The parties were apparently agreed that if such negligence proximately causing the explosion and fire were established, the conclusion must necessarily follow that the explosion and fire were occasioned with the privity or knowledge of Pacific Inland, thereby precluding exoneration from or limitation of liability.[6]

The pretrial order also recites that Pacific Inland "concedes" that findings of fact III to V, entered in the state action, quoted in note 2 (but not finding of fact VI) are now binding upon it as to the issues of liability and damages. There is also set out in the pretrial order a statement of some of the facts pertaining to conditions existing and actions taken immediately preceding the explosion and fire, which statement the

result of a shorted condition in the starboard deck light circuit which was of an intermittent nature, and that defendant's said employees in nowise corrected this defective condition by replacing the said circuit breaker switch.

"VI.

"The defendant corporation, acting through its management personnel, had never issued any instructions to its employees at Pasco, Washington, nor otherwise educated said employees as to proper and safe methods to employ in the event of any malfunction of the electrical systems on any of defendant's gasoline barges. The time of greatest hazard about a gasoline barge occurs when the gasoline is being unloaded and particularly when the tanks of the barge are nearly empty, and any malfunctioning of an electrical system which may produce a spark or arcing presents a situation of extreme peril of explosion. The management personnel of the defendant corporation were fully aware of the

aforesaid hazard and of the function of circuit breaker switches as a warning device, but the said employees, Oldfield and Bunce, were not so aware. The defendant corporation, acting through its management personnel, was negligent in failing to issue instructions to its employees or to otherwise educate them as to the warning function of the circuit breaker switches and as to safe and proper practices when such circuit breakers trip, particularly when gasoline is being or is about to be unloaded. The said explosion would not have occurred if the said employees had been so instructed or educated, and the said explosion was proximately caused by the negligence of the defendant in this respect."

6. We therefore refrain from deciding whether proof of such negligence necessarily establishes such "privity or knowledge," within the meaning of section 183 (a).

Port agreed not to contest but which, it asserted, are immaterial.

A trial in the district court was then had, followed by the entry of findings of fact, conclusions of law, and a judgment favorable to Pacific Inland. In the findings of fact, after describing the nature of the accident, findings of fact III to V entered in the state court action (quoted in note 2) are set out verbatim. It is also recited, in accordance with the pretrial order, that Pacific Inland concedes that these findings "are now binding upon it as to the issues of liability and damages.  *  *  *"

The district court entered exhaustive findings of fact of its own, based upon oral and documentary evidence produced at the trial before it. Among other things, these findings: described various conditions which existed on the barge on the evening in question tending to show that numerous safeguards against explosions or fires were employed; recited that Barge 535 had successfully undergone its annual U. S. Coast Guard inspection thirteen days before the explosion and fire; recited that Oldfield, a maintenance and tankerman, and Bunce, a tankerman, who had replaced the circuit breaker switch, were each certificated by the U. S. Coast Guard as tankermen qualified to handle gasoline products; stated that both before and after the installation of the new circuit breaker switch, Oldfield and Bunce visually inspected the exterior or exposed portion of the electrical wiring, cables and fixtures for the starboard deck light system and found no defect or abnormal condition in such examination; and stated that the employees of Pacific Inland, engaged in operations aboard Barge 535 at and immediately prior to the accident of December 16, 1958, were not corporate officers, managing agents or supervisory personnel of Pacific Inland.[7]

With particular reference to the asserted negligence of managing personnel in failing to instruct or otherwise educate Oldfield and Bunce in such manner that they would not have replaced and turned on the circuit breaker switch without the lighting system malfunction having first been discovered and corrected, the district court found that Oldfield and Bunce were competent and experienced as to the duties required of them by Pacific Inland; no corporate officer or supervisory employee was aboard Barge 535 after its arrival at Pasco on December 15, 1958, and before the explosion and fire which occurred on the following day; and no corporate officer or supervisory employee was notified or consulted concerning the tripping off of the circuit breaker switch.

The district court also found that Pacific Inland had established adequate safety procedures for the loading, discharging, maintenance and operation of its bulk petroleum barges, and safety precautions to be followed, through both written rules and regulations and verbal instructions; Oldfield and Bunce were complying with such rules, regulations and instructions at and prior to the explosion and fire; and while Pacific Inland had not issued any specific instructions or warnings to its employees concerning the operation, maintenance or replacement of switches in circuit-breaker units such as installed on the stern of Barge 535, Pacific Inland had no knowledge of any unusual hazards that were involved with regard thereto.

The district court further found that Pacific Inland had instructed its maintenancemen and tankermen not to undertake any extensive repairs on electrical systems and to discontinue using any such electrical circuits on equipment such as Barge 535 when a malfunction arose which could not be identified and easily corrected; and had instructed its employees to defer any testing, repair or maintenance on such electrical systems until a specialist could be called to determine the source or cause of the mal-

7. All of the findings summarized in this paragraph are identical with the statement of undisputed facts set out in the pretrial order.

function and undertake to repair or correct it.

The district court found that Pacific Inland and its employees had complied with all regulations of the U. S. Coast Guard concerning the equipment aboard and operation of Barge 535; Pacific Inland was not guilty of violating any applicable Coast Guard regulation, or any regulation of the Port, or of the Pasco Fire Department concerning the unloading operation or the condition and maintenance of equipment, including electrical wiring systems and circuit breakers aboard the barge; Pacific Inland was adhering to standards of care as to the operation and maintenance of Barge 535, and as to the maintenance and repair of equipment, including circuit breakers, on the barge, as recognized in the marine and bulk gasoline transportation industry and by any governmental regulatory body; an experienced electrician or other persons in the marine industry operating similar barges and transporting similar products would have utilized the same procedure as followed by the maintenance men in this instance in undertaking to correct the difficulty encountered by replacing the circuit breaker switch and turning on the switch to check the lighting circuit before undertaking more detailed or expert testing procedures.

Based upon these and other detailed findings of fact the district court made ultimate findings of fact and conclusions of law to the effect that there was no negligence by Pacific Inland or its corporate officers or supervisory personnel in failing to instruct or educate its employees, or otherwise, and that the explosion and fire on Barge 535 were occasioned without their privity or knowledge.

Challenging these findings and conclusions, the Port first argues that the admitted facts in the pretrial order, coupled with the assertedly clear showing of a total failure adequately to instruct subordinate employees, establish privity and knowledge as a matter of law.

In this statement of appellant's first contention, reference is made to: (1) the admitted facts in the pretrial order, and (2) the "clear showing" in the evidence concerning the failure to instruct. But, in arguing the point, appellant also relies upon the asserted "binding" effect of the state court findings of fact on the question of liability.

By reason of the stipulation, and the order entered pursuant thereto modifying the restraining order, the decision of the state court on the questions of liability and damages was made binding upon the parties. But the question of limitation of liability was reserved for determination by the district court. It follows that the latter court was free to make its own findings and conclusions with regard to whether supervisory personnel were negligent in such manner as to constitute privity and knowledge within the meaning of section 183(a). If this freedom of action left to the district court means anything, it means that the district court was at liberty to make findings and conclusions which might be expressly or implicitly inconsistent with those made by the state court as a basis for the latter's decision on liability.

Thus the findings of the state court that supervisory personnel were negligent and that Oldfield and Bunce did not possess sufficient skill or understanding of things electrical so as to realize that a tripped circuit breaker switch should not be reactivated without first investigating what caused the switch to trip, entered in deciding the question of liability, were not, as such, binding upon the district court in deciding the question of limitation of liability. Appellant does not appear to argue to the contrary.

But, as appellant points out, in the pretrial order it is recited that appellee concedes that paragraphs III, IV and V of the state court findings "are now binding upon it as to the issues of liability and damages." Paragraph V of those findings includes the finding, summarized above, concerning Oldfield's and Bunce's lack of skill and understanding.

It is argued from this that it is established by appellee's pretrial concession that Oldfield and Bunce could not have been negligent because they did not act with knowledge of the risk involved. Therefore, appellant urges, since the state court found liability and that finding is binding upon the parties, and since there could be liability only if some of appellee's personnel were negligent, the district court was bound to find, as a matter of law, that the supervisory personnel were negligent.

There are at least two weaknesses in this line of reasoning. The first of these is that appellee's concession, recited in the pretrial order, was that the indicated findings of fact were binding upon it "as to the issues of liability and damages." Appellee did not concede that such findings were binding upon it on the issue of limitation of liability.

The second weakness in this line of reasoning is that even if the concession is deemed to be applicable on the issue of limitation of liability, it would not preclude a finding by the district court that supervisory personnel were not negligent. The district court would still be free to find that none of the personnel, supervisory or otherwise, were negligent.[8] Such a result might seem to be anomalous, in view of the binding determination that Pacific Inland is liable because of negligence. It is nevertheless a permissible result in view of the stipulation of the parties, and the order entered pursuant thereto, dividing the decisional function between two trial courts, each being given a free rein in the field assigned to it.

Appellant contends that the decision of this court in States Steamship Co. v. United States, 9 Cir., 259 F.2d 458, precludes a finding that the supervisory personnel of Pacific Inland were not negligent.

In the States Steamship Co. case, the district court found that the loss of the ship was caused by its unseaworthy condition, and that the latter condition resulted from a lack of due diligence. The district court nevertheless held that the unseaworthy condition of the vessel at the inception of the voyage was without the privity or knowledge of the owner, and that liability could therefore be limited. In reversing on rehearing, the court held that in view of the finding that the loss was caused by unseaworthiness resulting from the lack of due diligence, it could not be held that the loss was occasioned without the privity or knowledge of the owner, unless there was a finding that the negligence which the court found existed was that of a non-supervisory agent.

Appellant argues that the same situation exists here—there is a determination of liability based on negligence and a finding which, by reason of the pretrial order concession is said to be binding on the district court, precludes a finding that non-supervisory personnel were negligent. So, appellant argues, the district court could not hold that the loss was occasioned without the privity or knowledge of Pacific Inland, because it could not, and did not, find that the established negligence was that of non-supervisory personnel.

In States Steamship Co., the trial was before one court. That court, having found that negligence existed, could not, with consistency, hold the owner to be free from privity or knowledge without first expressly finding that the negligence was that of non-supervisory personnel. In our case, however, the question of limitation of liability was decided by a court different from that which determined liability. The state court decision that supervisory personnel were negligent, or that at least some of Pacific Inland's personnel were negligent, was not binding on the federal court. Nor, for reasons already stated, did the pretrial order concession preclude the federal court from finding supervisory personnel free from negligence.

We therefore hold that, with regard to the concessions recited in the

---

8. In effect, that is exactly what the district court did find.

pretrial order, as well as the stipulation and order that the state court findings would be binding on the question of liability, the district court was not required to find, as a matter of law, that the explosion and fire were occasioned with the privity and knowledge of Pacific Inland.

Appellant, however, in urging a contrary view, seeks to add as an additional factor, " * * * the Clear Showing of a Total Failure to Adequately Instruct the Subordinate Employees. * * * "

Appraisal of such a factor, however, calls for a determination of whether the district court's finding of fact to the contrary is clearly erroneous. See McAllister v. United States, 348 U.S. 19, 75 S.Ct. 1, 99 L.Ed. 20. If we should determine that such a finding is clearly erroneous, it would not indicate that the district court was required to find privity and knowledge because of some principle of law, but that it was required to make such a finding because of the evidence. It follows that this particular factor is more appropriately to be considered, and will be considered, under appellant's second main argument stated immediately below.

■ Appellant's second main argument on this appeal is that the finding of the district court that liability should be limited is clearly erroneous as a matter of fact.

This finding is clearly erroneous, appellant contends, because it is necessarily predicated on a finding that the explosion and fire were occasioned without the privity or knowledge of supervisory personnel and the evidence does not support such a finding. According to appellant, the evidence required the trial court to find that a proximate cause of

the explosion and fire was the failure of supervisory personnel to issue particular instructions to its employees, or otherwise educate them, as to what to do in the event of any apparent malfunction of the electrical systems or tripping of a circuit breaker switch on Barge 535 or any barge when loading or unloading of gasoline was in progress or about to begin. The trial court did not so find, but, to the contrary, found that Pacific Inland exercised due diligence and adequately performed any duty or obligation resting upon it as barge owner to instruct and educate its employees.[9]

The fact was abundantly established, and the district court so found, that supervisory personnel did not issue to Oldfield and Bunce, or other employees, any particular instructions or warnings as to what procedures to follow in the event a circuit breaker switch should trip when loading or unloading of gasoline was in progress or was about to begin.

The district court held, however, that Pacific Inland was not negligent in failing to issue particular instructions or warnings of this kind. The court seems to have based this holding on several grounds, one being the finding, in effect, that the hazard was not foreseen nor reasonably foreseeable.

If the evidence supports such a finding, the conclusion based thereon that Pacific Inland was not negligent in failing to issue such instructions or warnings, is unassailable. Appellant itself has called our attention to the principle that negligence presupposes a reasonably foreseeable hazard, and has cited Alaska Freight Lines v. Harry, 9 Cir., 220 F.2d 272, 275, wherein this rule was acknowledged.[10]

The evidence was sufficient to support the finding that supervisory personnel

---

9. As noted earlier in this opinion, the parties are apparently in agreement that if there was such negligence, there was privity or knowledge within the meaning of section 183(a). See note 6.

10. We there quoted with approval a statement to be found in 155 A.L.R., at page 157, reading in part:

"Generally, an act or omission does not constitute actionable negligence, unless a reasonably prudent person, placed in the position of the actor, would have foreseen the probability of harm resulting from his acts or omissions."

did not have actual knowledge of the hazard of replacing and reactivating a circuit breaker switch which had tripped during or immediately preceding the unloading of gasoline. E. R. Boyles, who was supervisor of the Pasco terminal for Pacific Inland at the time in question, so testified. He indicated that while he realized that the tripping of the switch might be due to a short circuit in the wiring system, he had thought the circuit breaker switch itself, when reactivated, would protect against such a hazard.

The evidence was also sufficient, in our opinion, to support the implicit if not express finding of the trial court that a reasonably prudent person placed in the position of Boyles or other supervisory personnel of Pacific Inland, would not have foreseen the probability of harm resulting from such a replacement and reactivation of a circuit breaker switch, and therefore of the necessity of instructing or warning Oldfield and Bunce not to follow that course.

There was testimony that supervisor Boyles spent from two to three days of each week at the Pasco terminal and went aboard the gasoline barges on almost every such occasion. At such times he discussed safety and maintenance procedures with the maintenancemen and the tankermen, including the problems in connection with the electrical wiring and circuits. Yet no intimation seems to have come to Boyles that there might be a hazard of the kind under discussion.

Glen H. Holt, who testified as an expert witness for Pacific Inland, characterized the chances of triggering an explosion in the way in which this explosion was triggered, as only "remotely possible."

Walter T. House, another expert witness called by Pacific Inland, testified

that it was customary and standard procedure in the industry for such a circuit breaker switch to be replaced by a tankerman or pump man without calling for the services of a shore electrician.[11] Captain House regarded replacement of tripped circuit breaker switches as normal small maintenance to be taken care of by maintenancemen or tankermen. He also testified that there was no Coast Guard regulation prescribing procedures to follow in such cases.

Appellant points to some other testimony by these witnesses which, it believes, tends to undermine that referred to above. It also calls attention to the testimony of other witnesses which, in appellant's opinion, show that this hazard was reasonably foreseeable. But the testimony relied upon by the district court was not internally inconsistent nor intrinsically improbable, and the evidence not relied upon was not so overwhelming as to clearly outbalance that on which the district court finding is based.

Appellant argues, on this point as well as on its first point, that the findings of the trial court, at least to the extent conceded in the pretrial order, were binding upon the district court and should have produced findings of fact contrary to those entered. But it is our view, as heretofore expressed, that the state court findings did not, by operation of the concession or otherwise, prevent the district court from making its own assessment of the evidence bearing upon negligence, including the matter of foreseeability, in determining the question of limitation of liability.

We hold that the findings of fact upon the basis of which the district court held that liability should be limited, are not clearly erroneous.

The judgment is affirmed.

11. The parties are agreed that evidence of customary practice is not controlling on the question of negligence, but is nevertheless evidence of ordinary care. See Johnson v. United States, 9 Cir., 270 F. 2d 488, 491; Young v. Aeroil Products Co., 9 Cir., 248 F.2d 185, 189.